OSCN Found Document:SPARKS v. OLD REPUBLIC HOME PROTECTION CO. INC.

 

 
 

 
 SPARKS v. OLD REPUBLIC HOME PROTECTION CO. INC.
2020 OK 42
Case Number: 115789
Decided: 05/27/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 42, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

WILLIAM B. SPARKS and DONNA SPARKS, Plaintiffs/Appellees,
v.
OLD REPUBLIC HOME PROTECTION COMPANY, INC., Defendant/Appellant,

OLD REPUBLIC INTERNATIONAL and ALL SEASON'S HEATING AND AIR, LLC, Defendants.

ON WRIT OF CERTIORARI TO THE 
COURT OF CIVIL APPEALS, DIVISION NO. II

Â¶0 Plaintiffs are homeowners who brought suit against Old Republic Home Protection Company, Inc., for breach of contract and bad faith breach of contract of their home warranty policy. Defendant filed a motion to compel arbitration of the underlying dispute pursuant to a contractual provision requiring resolution of disputes through binding arbitration. Plaintiffs argued that mandatory arbitration provisions are prohibited by 12 O.S. 2011 Â§ 1855 (D) in any contract that references insurance and this matter should proceed in district court. The court denied defendant's motion for arbitration. Defendant appealed from this interlocutory order and the Court of Civil Appeals affirmed the District Court. We granted certiorari to address the first impression question of whether this home warranty contract constitutes an insurance contract. We hold that the home warranty contract at issue meets the definition of an insurance contract.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT
OF CIVIL APPEALS VACATED; ORDER OF THE DISTRICT COURT
AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS 

Amy N. Bennett, John David Lackey, PAUL & LACKEY, P.C., Tulsa, Oklahoma, for Defendants/Appellants

Mark E. Bialick, R. Ryan Deligans, DURBIN LARIMORE & BIALICK, Oklahoma City, Oklahoma, and
David W. Little, LAW OFFICES OF DAVID LITTLE, Oklahoma City, Oklahoma, for Plaintiff/Appellee

OPINION

EDMONDSON, J.:

Â¶1 We granted certiorari to address the first impression questions of: (1) whether a home warranty plan meets the definition of an insurance contract, (2) and if it is insurance, whether a forced arbitration clause in such a contract is unenforceable under the Oklahoma Uniform Arbitration Act, (3) whether 12 O.S. 2011 Â§ 1855 of the Oklahoma Uniform Arbitration Act is a state law enacted for the purpose of regulating insurance under the McCarran-Ferguson Act, 15 U.S.C. Â§ 1012 (b), and (4) whether pursuant to the McCarran-Ferguson Act, does Â§ 1855 preempt the application of the Federal Arbitration Act, 9 U.S.C. Â§Â§ 1 - 307? We answer all questions in the affirmative.

FACTS AND PROCEDURAL HISTORY

Â¶2 Donna Sparks purchased a policy from Old Republic Home Protection (ORHP) which included coverage for the repair or replacement cost of the home air conditioning system during the stated policy term. ORHP drafted this contract which included a provision that disputes between the parties would be resolved by arbitration under the Federal Arbitration Act. There is no evidence that this arbitration policy provision was independently discussed or negotiated between the parties. Almost six months after purchasing the coverage, the Plaintiffs alleged they suffered a covered loss. Specifically, Plaintiffs claimed that their home was extensively damaged as a result of problems that arose from faulty repair work to the air conditioning system. Plaintiffs notified ORHP when covered repairs were needed who then selected the repair company to be dispatched to their home. Plaintiffs alleged that ORHP engaged in a pattern and practice of using unqualified contractors to perform work and deliberately sought contractors who would opine little or no work was needed. ORHP did not directly perform the home repair services. Homeowners asserted that ORHP was negligent in the selection and hiring of the repair company, and thus ORHP is liable to the Plaintiffs for damage to their home. On July 7, 2016, homeowners filed a lawsuit against ORHP for breach of contract and bad faith breach of contract.

Â¶3 The contract is titled as an "Oklahoma Home Warranty." The contract identifies the following advantages of an Old Republic Home Warranty Plan:[1]

Home Buyers
In an ideal world, buying a home should be one of the most memorable and rewarding experiences of your life. However, the headaches caused by a heating system failure or a broken refrigerator could taint those memories forever.

Â 

Safeguard your budget against expensive system and appliance failures with an Old Republic Home Warranty Plan. . . .

Â 

What would you pay without a home warranty? Potential out-of-pocket repair or replacement costs for major systems and appliances:

 
 
 
 Item
 
 
 Repair/Replacement
 Cost without a Home Warranty
 
 
 
 
 Heating System
 
 
 $318 - $3,911
 
 
 
 
 Air Conditioning
 
 
 $360 - $5,100
 
 
 
 
 Water Heater
 
 
 $384 - $2,331
 
 
 
 
 Oven/Range
 
 
 $325 - $2,487
 
 
 
 
 Refrigerator
 
 
 $294 - $1,904
 
 
 
 
 Washer/Dryer
 
 
 $230 - $1,112
 
 
 

Â 

The rate sheet reflects the respective premium for each of the three different levels of coverage offered, Standard, Ultimate and Platinum. On the bottom corner of this page also appears an insignia with "Old Republic Insurance Group."[2] Plaintiffs purchased the Platinum coverage and the "Declaration of Coverage" identifies the contract as a "home warranty."[3]

Â¶4 Initially, ORHP pled that it was an insurance company and that the agreement between ORHP and the Plaintiffs was an "insurance" contract but later pled that it was not an insurance company and that this was simply a home service contract but not insurance. This change in position was reflected in an Amended Answer filed after the trial court's February 7, 2017 Order denying ORHP's motion to compel arbitration. There is no transcript of this hearing and no evidence in the record reflecting that ORHP obtained leave of court to file the Amended Answer. Homeowners did not file an objection to the amended pleading.

Â¶5 On February 8, 2017 the trial court filed a summary order stating ORHP's "motion to compel arbitration denied- motion to stay denied." [4] The trial court made no other findings and the order is silent on the reason for the denial. An appeal may be taken from an order denying a motion to compel arbitration. 12 O.S. 2011 Â§ 1879 (A) (1).

Â¶6 ORHP filed a Petition in Error on February 23, 2017 urging that it was error for the district court to deny the Motion for Arbitration and Motion to Stay "given the contract between the parties pursuant to the Federal Arbitration Act (9 U.S.C. Â§ 1, et seq.), the Oklahoma Uniform Arbitration Act (12 O.S. Â§ 1851 et seq.), and applicable case law interpreting those statutes."[5] On appeal, ORHP argued as follows: (1) the FAA controlled this dispute, (2) the Oklahoma Uniform Arbitration Act is preempted by the FAA, (3) McCarran-Ferguson Act does not apply because "Old Republic and the Plaintiffs chose the law that governs all disputes (the FAA)." ORHP did not dispute that the McCarran-Ferguson Act gives individual states the right to regulate insurance or that "12 O.S. Â§ 1855 (D) purports to regulate insurance in Oklahoma."[6] However, ORHP argued that the "McCarran-Ferguson Act can only apply when interpreting a contract that does not contain a choice of law agreement,"[7] and therefore, it was not relevant to any issue before this Court. ORHP cited no legal authority to support this last argument. The sole support offered by ORHP was simply that "the FAA is not reverse preempted by the McCarran-Ferguson Act because this Contract chooses the FAA to the exclusion of any contradictory laws."[8] We are not persuaded by statements without legal authority.

Â¶7 ORHP drafted the preprinted policy issued to the Plaintiffs. ORHP inserted all language regarding the FAA choice of law. Contrary to ORHP's argument, Dean Witter Reynolds, Inc. v. Shear, 1990 OK 67, Â¶ 1, 796 P.2d 296 does not support the argument that the FAA must control as the "choice of law" chosen by the parties in the contract; it offers no useful guidance in this regard. Dean Witter obtained an arbitration award against its customer and then brought an action pursuant to the Oklahoma Uniform Arbitration Act to obtain an executable judgment. On appeal, Shear sought relief on the single contention that the arbitration and the choice-of-law clauses were void under a provision of the Oklahoma constitution. We refused to consider this argument because Shear failed to timely preserve this issue by proper response to the summary judgment filed by Dean Witter. For that reason we held that Shear "cannot now invoke Oklahoma law to test the validity of the arbitration clause of the State's fundamental law." Dean Witter Reynolds, 1990 OK 67, Â¶ 7, 796 P.2d at 298. We did not hold, as urged by ORHP, that New York law and the arbitration clause applied because of the parties "choice of law" provision in the contract. Unlike the appellant in Dean Witter Reynolds, the Plaintiffs challenged the choice of law provision before the trial court, and this issue is fully preserved. We do not find Dean Witter Reynolds instructive on the issues before us.

Â¶8 ORHP further asserted that the application of 12 O.S. 2011 Â§ 1855 conflicts with federal law, ie. the FAA, which should preempt any conflicting state law under the pronouncements of Marmet Health Care Ct., Inc. v. Brown, 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed.2d 42. In Marmet, the West Virginia court held that as a matter of public policy under West Virginia law, an arbitration clause in a nursing home agreement adopted prior to a negligent act shall not be enforced to compel arbitration. The state court went on to conclude that the FAA did not preempt the state public policy against predispute arbitration agreements as applied to claims for personal injury against a nursing home. The Supreme Court found that the FAA displaces a state law that prohibits outright the arbitration of a particular type of claim. Id., 565 U.S. at 533, 132 S.Ct. at 1203. The Marmet court did not consider the reverse preemption granted to states under the McCarran-Ferguson Act for state law provisions relating to the business of insurance. For this reason, we do not find Marmet controlling.

Â¶9 Next ORHP argued that "home warranties" are really a 'home service contract' and therefore this type of contract by statutory definition is not insurance pursuant to the Oklahoma Home Service Contract Act, 36 O.S. Â§Â§ 6750 - 6755. ORHP further argued, if this contract is not "insurance" then Section 1855 of the Oklahoma Uniform Arbitration Act would not apply, which exempts any contract that "references insurance" from the provisions of that Act. If the contract at issue was not one that referenced insurance, then the McCarran-Ferguson Act would not apply to reverse preempt the Federal Arbitration Act. Stated differently, the FAA would preempt any state law that would be in conflict and this matter should be ordered to arbitration. As more fully discussed below, we find the home warranty is insurance and we reject these contentions from ORHP.

Â¶10 On November 19, 2018 the Court of Civil Appeals affirmed the lower court's order, with one judge dissenting. The majority concluded that Oklahoma state law, the Uniform Arbitration Act, 12 O.S. 2011 Â§1855 (D) prevented the trial court from compelling arbitration because the contract "referenced insurance" within the meaning of this Act and further that the Oklahoma legislature did not intend to exempt contracts made pursuant to the Oklahoma Home Service Contract Act[9] (HSCA) and the Service Warranty Act[10] (SWA)from this provision in the Uniform Arbitration Act. We agree.

Â¶11 On Petition for Certiorari, ORHP argued that COCA erred and this matter presented a case of first impression on whether an arbitration clause in a "home protection plan" could be disregarded under the Federal Arbitration Act (FAA). In addition, ORHP urged that the decision by the COCA determining that the home warranty in this case is a contract that "references insurance," and calling home warranty agreements "insurance" : (1) departed from the accepted and usual course of judicial proceedings calling for this Court's power of supervision, (2) invaded the legislative prerogative and interpreted statutes contrary to the express language provided by the legislature, (3) deviated from federal and state case law by invalidating the choice of law clause in the contract, and the parties' agreement to utilize the Federal Arbitration Act, and (4) ignored the plain language of the home service contract statute declaring that "home service contracts are not insurance in this state."

Â¶12 Homeowners argued that the federal McCarran-Ferguson Act authorized the "reverse preemption" of the FAA in this instance. Because the FAA did not preempt relevant Oklahoma state law involving the regulation of insurance, Homeowners replied that the Court of Civil Appeals did not err in holding that Â§ 1855 of the Oklahoma Uniform Arbitration Act barred the enforcement of arbitration in this matter. We agree.

Â¶13 We granted certiorari on May 28, 2019.

STANDARD OF REVIEW

Â¶14 ORHP urged that arbitration is the appropriate forum to resolve this matter. Homeowners disputed that ORHP was entitled to an order for arbitration under both Oklahoma law and federal precedent. As the party opposing the motion for arbitration, the Plaintiffs had the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue; an intention discernible from the statute's text or legislative history or an inherent conflict between arbitration and the statute's underlying purposes." Thompson v. Bar-S Foods Co., 2007 OK 75 Â¶ 8, 174 P.3d 567, 572. [11] The trial court's denial of a motion to compel arbitration is to be reviewed de novo. Thompson, 2007 OK 75, Â¶ 9, 174 P.3d at 572.[12] 

FEDERAL LAW: REVERSE PREEMPTION UNDER McCARRAN- 
FERGUSON ACT WITH STATE LAWS INVOLVED IN 
REGULATION OF INSURANCE 

Â¶15 Generally speaking, the Federal Arbitration Act (FAA) preempts any state law limiting the enforcement of arbitration. See, eg., Preston v. Ferrer, 552 U.S. 346, 352-53, 128 S. Ct. 978, 169 L.Ed.2d 917 (2008). Preemption stems from the Supremacy Clause of the United States Constitution that insures federal law will prevail or "preempt" a conflicting state law. Smith Cogeneration Mgmt., Inc. v. Corp. Comm'n, 1993 OK 147, Â¶ 21, 863 P.2d 1227, 1239. The foundation of ORHP's argument is grounded in the concept of preemption, namely that the FAA should have preempted Â§ 1855 of the Uniform Arbitration Act to the extent it conflicted with the federal law, and the parties should have been ordered to arbitrate the claims. ORHP further urged that the COCA decision violated the Supremacy clause of the United States Constitution. However, ORHP's argument ignores the clear mandates of another federal law, the McCarran-Ferguson Act, 15 U.S.C. Â§Â§ 1011 - 1015, which bestows upon states absolute authority over matters relating to the regulation of insurance. Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc., 867 F. 3d 449 (4th Cir. 2017). This Act and its implications must be understood in the context of the issues material to this matter.

Â¶16 The McCarran-Ferguson Act was enacted in 1945 following a decision by the Supreme Court holding insurance was subject to federal regulations under the interstate commerce clause shifting control away from the states. See United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Prior to this decision, "it had been assumed ... that the issuance of an insurance policy was not a transaction in interstate commerce and that the States enjoyed a virtually exclusive domain over the insurance industry." St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 538-39, 98 S. Ct. 2923, 57 L.Ed2d 932 (1978). In response to South-Eastern. Underwriters, Congress legislatively restored the States preeminent position with respect to the regulation of insurance through the adoption of McCarran-Ferguson. See, U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

Â¶17 This Act specifically states that "no Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. Â§ 1012. The landmark McCarran-Ferguson Act completely "transformed the legal landscape by overturning the normal rules of pre-emption. " U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). McCarran-Ferguson "authorizes 'reverse preemption' of generally applicable federal statutes by state laws enacted for the purpose of regulating the business of insurance." ESAB Grp. Inc. v. Zurich Ins. PLC, 685 F.3d 376, 380 (4th Cir. 2012), See also, Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London, 587 F.3d 714, 720 (5th Cir. 2009) (en banc), cert. denied, 562 U.S. 827, 131 S.Ct. 65, 178 L.Ed.2d 22 (2010).

Â¶18 Almost simultaneously with congressional efforts to insure the states' dominance with respect to insurance regulation, Congress was also moving to federalize arbitration policy. In 1925, Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. Â§Â§ 1-16, establishing a liberal federal policy in favor of arbitration in maritime and commercial contracts. ESAB, 685 F.3d at 380.[13] The interplay between these two acts is considered with regard to the resolution of the issues before this Court.

McCARRAN FERGUSON ACT: CONTRACTS REGULATING
THE 'BUSINESS OF INSURANCE' ARE PROTECTED FROM
PREEMPTION BY THE FAA

Â¶19 The Supreme Court of the United States has not yet spoken on the specific interplay between the McCarran-Ferguson Act and the FAA. However, the high court has made clear that the FAA policy in favor of arbitration may not be asserted to resolve a foundational challenge to the validity of an arbitration agreement. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 130 S.Ct. 2847, 177 L. Ed2d 567 (2010). The Court explained that the presumption of favoring arbitration is applied "only where it reflects, and derives its legitimacy from a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass that dispute. Id. 561 U.S. at 303, 130 S. Ct. 2847.

Â¶20 We acknowledge that by virtue of the Supremacy Clause, "we are governed by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence." Hollaway v. UNUM Life Ins. Co. of America, 2003 OK 90, Â¶ 15, 89 P.3d 1022, 1027. Where the United States Supreme Court has not spoken on the direct issue, "we are free to promulgate judicial decisions grounded in our own interpretation of federal law." Id.

Â¶21 A number of federal courts who have considered the interplay between the FAA and the McCarran-Ferguson Act have held that state laws involving the business of insurance take precedence over the competing federal law, FAA favoring arbitration. Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance, 867 F.3d 449, 454 (4th Cir. 2017).[14] The Fourth Circuit acknowledged that the FAA generally preempts a state law limiting the enforcement of arbitration agreements. The Minnieland court discussed that it agreed with the district court's conclusion that mandatory arbitration provisions in insurance contracts were void pursuant to Va. Code Ann. Â§ 38.2-312. On appeal, there was no disagreement that this state law provision, which we note is similar to the Oklahoma provision, reverse preempted the FAA.

Â¶22 Many other courts have concluded that state laws invalidating arbitration provisions in insurance contracts reverse preempt the FAA. Am. Bankers ins. Co. of Fla. v. Inman, 436 F.3d 490, 494 (5th Cir. 2006); See also, Love v. Money Tree, Inc., 279 Ga. 476, 614 S.E.2d 47, automobile club memberships constituted insurance and the state law prohibiting arbitration in contracts of insurance was held to be a state law enacted for the purpose of regulating insurance, and thus, the McCarran-Ferguson Act precluded the FAA from preempting the conflicting state law; State, Dept. of Transp. v. James River Ins. Co., 176 Wash.2d 390, 292 P.3d 118 (2013), state statute prohibiting any agreement in insurance contract which deprived court of jurisdiction against the insurer and void mandatory arbitration provisions constituted the business of regulating insurance, thereby shielding the state statute from preemption by the FAA under the McCarran-Ferguson Act.

Â¶23 In this matter, the judicial conclusion by the lower court was to deny ORHP's request for arbitration. The COCA then held that the state law, Â§ 1855 which plainly exempts "contracts which reference insurance" from arbitration is a state law regulating the business of insurance. Accordingly, under the the McCarran-Ferguson Act, the state law must prevail over the federal law, the FAA; ie., this state law enjoys the benefit of reverse preemption.

OKLAHOMA UNIFORM ARBITRATION ACT "SHALL NOT 
APPLY TO CONTRACTS WHICH REFERENCE INSURANCE"

Â¶24 Furthermore, for more than half a century, this Court has held that an insurance company's insertion of forced arbitration in an insurance contract deprived the insured of a judicial examination and determination of the issues and such policy provision was contrary to public policy and unenforceable. Boughton v. Farmers Ins. Exch., 1960 OK 159, Â¶ 13, 354 P.2d 1085, 1089. Boughton relied solely on the common law as Oklahoma had not yet enacted an arbitration statute.

Â¶25 After the adoption of our state Uniform Arbitration Act, we examined the predecessor to Â§ 1855, 15 O.S. 1991 Â§ 802 (A) (repealed 2006) which stated that the Act "shall not apply to ... contracts with reference to insurance except for those contracts between insurance companies." Cannon v. Lane, 1993 OK 40 , 867 P.2d 1235. In Cannon, we considered a binding arbitration provision in a health insurance contract and refused to enforce an order for arbitration because the contract between the parties "related to insurance" falling within this exception to the Act. We also noted that "under the authority of Wilson, Boughton, and 15 O.S. 1991 Â§ 216 , such a contract is void." 1993 OK 40, Â¶ 11, 867 P.2d at 1239.

Â¶26 In 2006, the Act was recodified and 15 O.S. 1991 Â§ 216 was replaced with the current law, 12 O.S. 2011 Â§ 1855 (D) which provides:

D. The Uniform Arbitration Act shall not apply to collective bargaining agreements and contracts which reference insurance, except for those contracts between insurance companies. (Emphasis added).

Next, we examine whether the contract "references insurance" and therefore is exempt from the Oklahoma Uniform Arbitration Act. ORHP urged that the contract could not be treated as insurance because by statute, "home service contracts are not insurance in this state." 36 O.S. 2011 Â§ 6752 (9). We disagree with this conclusion on the basis of several factors. The contract drafted by ORHP is titled a "home warranty" and not a home service contract, and it is unclear whether Â§ 6752 (9) has any application to the instant matter. This will be discussed in more detail. In addition, Â§ 1855 (D) is broader than advocated by ORHP. Section 1855 does not state that the Uniform Arbitration Act shall not apply to insurance contracts, rather it exempts contracts which simply reference insurance as defined by this Court's extensive jurisprudence. Finally, we look more closely at the nature of the home warranty before us and examine its nature in light of guidelines from the Supreme Court of the United States, Oklahoma statutes defining "insurance," and the wisdom of other Courts.

HOME WARRANTY CONTRACTS ARE CONTRACTS THAT 
"REFERENCE INSURANCE"

Â¶27 We have previously noted the initial admission by ORHP that the contract at issue was "insurance" and it was an "insurance company." Following the trial court's denial of the motion for arbitration, ORHP filed an Amended Answer stating the policy at issue is not insurance and it is not an insurance company. There was no objection filed to this amended response, and there is nothing in the record to reflect that ORHP obtained leave of court to file this amendment. It is evident from these contradictory pleadings that even ORHP was confused about whether the home warranty was insurance and if it was an insurance company.

Â¶28 The record before us reflects that the Old Republic International Corporation (ORI) Annual Review, 2015, listed ORHP as a subsidiary and a member of the company's "General Insurance Group" with "premiums written" in 2015 that exceeded two hundred million dollars ($200,000,000.00).[15]ORI also listed ORHP as one of its 27 "insurance companies"[16] and referred to ORHP as part of the "General Insurance Group" selling policies accounting for 5% of all premium volume for the entire parent company.[17] Although this information is not determinative of whether the plan before us is "insurance" it does reflect how the parent company considered and treated ORHP. Furthermore, the actual contract with the Plaintiffs has an insignia clearly printed on it "Old Republic Insurance Group."

Â¶29 ORHP solely drafted the contract and ORHP determined the use of all terms including the following references within the contract: "Oklahoma Home Warranty," and "Old Republic Home Warranty Plan." [18] ORHP did not include the term "home service contract" in the contract before this Court; in fact those words are noticeably absent. Under the Old Republic Home Warranty Plan, the Plaintiffs agreed to pay a predetermined premium and, in exchange, ORHP agreed to assume the risk of paying for the repair and/or replacement of specifically identified appliances as well as heating and cooling systems. Although ORHP designated the contract as a "home warranty," it argued that the contract should instead be treated or deemed to be a "home service contract" governed by the Oklahoma Home Service Contract Act (HSCA), 36 O.S. 2011 Â§Â§ 6751 et seq.

Â¶30 Before we discuss what application, if any, the HSCA has in this matter, we examine more closely the terms and effect of the "home warranty plan" drafted by ORHP and whether this contract is one that "references" insurance. We note that even ORHP has convincingly argued that the company's "home warranty plans are analogous to insurance." See, Campion v. Old Republic Home Protection Co., Inc., 561 F.Supp.2d 1139, 1144, (S.D. Cal. 2012). In this California case, ORHP was facing an action filed under the Consumer Legal Remedies Act. In Campion, identical to the instant contract before us, the ORHP home warranty plan provided that covered systems and appliances that become inoperable during the contract term due to normal wear and tear will be repaired or replaced at the expense of ORHP or the plan holder would be provided with payment in lieu of repair or replacement. Under the home warranty plan, ORHP did not perform the services but rather maintained a network of independent contractors that it dispatched to a planholder's home to perform the service. The plaintiff in Campion unsuccessfully argued that the home warranty contracts fell under the consumer act because they were "service" contracts. ORHP advocated in the California case that the home warranty was not a service contract, but rather was insurance. The Campion court was swayed by ORHP's position and offered the following notable distinction:

Defendant's home warranty plans are not contracts for repair or replacement services and Defendant does not itself provide these services. Instead the plans are designed to offer protection to home owners from potential future losses. The plans obligate Defendant to pay for the cost of the repair or replacement of covered systems and appliances that become inoperable due to normal wear and tear during the term of the contract. It is possible a claim may never be submitted and, thus, a homeowner may not receive any 'goods or services' under his or her plan. The home warranty plans provide for a transfer of risk that is not merely incidental, but rather is a central and relatively important element of the plans, and the relationship between Defendant and its plan holders and their respective obligations are consistent with the concept of 'insurance', as it is defined in the Insurance Code.

Campion, Id. at 1145-1146. The Campion court agreed with ORHP that the home warranty plan was consistent with the concept of insurance.

Â¶31 Likewise, ORHP's home warranty plan provides for the transfer of risk that is a central and important element of the plan. The plan reassured the Plaintiffs that this plan would "safeguard your budget against excessive system and appliance failures with an Old Republic Home Warranty Plan."

Â¶32 In McMullan v. Enterprise Financial Group, Inc., 2011 OK 7, 247 P.3d 1173, we were asked to determine whether a 'vehicle service contract' met the definition of an insurance contract. In concluding that it was "insurance," we relied on the guidance from the United States Supreme Court, Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 210, 228, 99 S.Ct. 1067, 59 L.Ed 2d 261 (1979) outlining the following necessary elements:

... The primary elements of an insurance contract are the spreading and underwriting of a policy holder's risk. It is characteristic of insurance that a number of risks are accepted, some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it." (Citations omitted)

McMullan, 2011 OK 7, Â¶ 11, 247 P.3d at 1178.

We also recognized that the Royal Drug court, quoting Jordan v. Group Health Assn, 71 App. D.C. 38, 107 F.2d 239 (1939) stated:

Whether the contract is one of insurance or of indemnity there must be a risk of loss to which one party may be subjected by contingent or future events and an assumption of it by legally binding arrangement by another.

McMullan, 2011 OK 7, Â¶ 12, 247 P.3d at 1178.

Â¶33 In McMullan we discussed that vehicle service contracts were written like insurance policies and that the "obvious purpose of a vehicle service contract is to protect the purchaser from the expenses associated with an unexpected mechanical breakdown or an expensive but necessary repair." McMullan, 2011 OK 7, Â¶ 13, 247 P.3d at 1178. In concluding that the contract was "insurance" we reflected that the "purchaser pays a premium and buys an agreement to shift any potential hazard they may face to the vehicle service provider." Id. Likewise, the primary feature of the ORHP home warranty plan was to "safeguard [the Plaintiffs'] budget against expensive system and appliance failures with an Old Republic Home Warranty Plan."[19] The Plaintiffs paid a premium to be insured that they would not have to pay the full repair costs in the event a covered system, like the air conditioning needed repair or replacing. In fact, the contract specifically notes the range of potential costs in the event of a covered system failure. By purchasing this policy, the Plaintiffs were relieved of this potential liability and instead this potential cost shifted to ORHP. Following our analysis in McMullan, the ORHP contract before us meets all the hallmarks of an insurance policy. Furthermore, this is the very conclusion reached by the Campion court when reviewing the ORHP home warranty policy, and as argued by ORHP in that matter.

Â¶34 We do not agree with the conclusion of ORHP that the contract is governed by the Oklahoma Home Service Contract Act. The legislature stated the purpose of the Oklahoma Home Service Contract Act "is to create an independent legal framework within which home service contracts are defined, may be sold and are regulated in this state." 36 O.S. 2011 Â§ 6751 (A). The very next section, Â§6752 subpart (9), has three sentences that need to be separately examined. The first sentence in this subpart states as follows:

"Home service contract" or "home warranty" means a contract or agreement for a separately stated consideration for a specific duration to perform the service, repair, replacement or maintenance of property or indemnification for service, repair, replacement or maintenance, for the operational or structural failure of any residential property due to a defect in materials, workmanship, inherent defect or normal wear and tear, with or without additional provisions for incidental payment or indemnity under limited circumstances. 36 O.S. 2011 Â§6752 (9)

The next sentence is directed only to "home service contracts" and does not include a reference to "home warranty" and states:

Home service contracts may provide for the service, repair, replacement or maintenance of property for damage resulting from power surges or interruption and accidental damage from handling and may provide for leak or repair coverage to house roofing systems.

The final sentence provides:

Home service contracts are not insurance in this state or otherwise regulated under the Insurance Code. 36 O.S. 2011 Â§ 6752 (9)

We take note that this final sentence does not state that home service contracts or home warranties are not insurance in this state or otherwise regulated under the Insurance Code. The exclusionary language, ie. "not insurance," is limited solely to "home service contracts." Within this definition section, the legislature provided a separate definition for "warranty" which states at Â§ 6752 (11) as follows:

"Warranty" means a warranty made solely by the manufacturer, importer or seller of property or services, including builders on new home construction, without consideration, that is not negotiated or separated from the sale of the product and is incidental to the sale of the product, that guarantees indemnity for defective parts, mechanical or electrical breakdown, labor or other remedial measures, such as repair or replacement of the property or repetition of services.

It is clear from this statutory scheme, that "home service contracts" are defined differently than a "home warranty." ORHP drafted this contract and identified this policy as a "home warranty" and never refers to this agreement as a "home service contract." We find that the Old Republic Home Warranty is not a home service contract as defined by this Act.

CONCLUSION

Â¶35 We hold that the Plaintiffs' home warranty plan meets the definition of insurance and as such is exempt from the Oklahoma Uniform Arbitration Act. We further hold that Â§ 1855 of this Act is a state law enacted for the purpose of regulating insurance, and thus, the McCarran-Ferguson Act applies precluding the Federal Arbitration Act from preempting conflicting state law.

CONCUR: Gurich, C.J., Darby, V.C.J., Kauger, Edmondson, Colbert, and Combs, JJ., Reif, S.J. and Bass, S.J.

CONCURS IN RESULT: Winchester, J.

FOOTNOTES

[1] Record, Exhibit 2, Defendant Old Republic Home Protection Co., Inc.'s Motion to Stay and Compel Arbitration, and Brief in Support, William B. Sparks and Donna Sparks, Plaintiffs v. Old Republic Home Protection Company, Inc., Defendant, CJ-16-795, District Court of Cleveland County.

[2] Id.

[3] Record, Exhibit 3, Defendant Old Republic Home Protection Co., Inc.'s Motion to Stay and Compel Arbitration, and Brief in Support, William B. Sparks and Donna Sparks, Plaintiffs v. Old Republic Home Protection Company, Inc., Defendant, CJ-16-795, District Court of Cleveland County.

[4] William B. Sparks and Donna Sparks, Plaintiffs v. Old Republic Home Protection Company, Inc., Defendant, CJ-16-795, District Court of Cleveland County, Summary Order, 2-8-17.

[5] William B. Sparks and Donna Sparks, Plaintiffs/Appellees, v. Old Republic Home Protection Company, Inc., Defendant/Appellant, 115,789, Petition in Error.

[6] William B. Sparks and Donna Sparks, Plaintiffs/Appellees, v. Old Republic Home Protection Company, Inc., Defendant/Appellant, 115,789, Appellant's Brief in Chief.

[7] Id.

[8] Id.

[9] Title 36 O.S. 2011 & Supp. 2012 Â§Â§ 6750-6755.

[10] Originally in Title 36, but revised and renumbered in 2012 as 15 O.S. Â§Â§ 141.1-141.35.

[11] Citing, Bruner v. Timberlane Manor Ltd. Partnership, 2006 OK 90, Â¶ 22, 155 P.3d 16, 25, quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185.

[12] See also, Fleming Companies, Inc. v. Tru Discount Foods, 1999 OK CIV APP 18, 977 P.2d 367, certiorari denied (Feb. 10, 1999).

[13] See also, CompuCredit Corp. v. Greenwood, 565 U.S. 95, 132 S.Ct. 665, 181 L.Ed 2d 586.

[14] See also, Am. Bankers Ins. Co. Of Fla. v. Inman, 436 F.3d 490, 494 (5th Cir. 2006), Mississippi statute prohibiting arbitration of disputes related to coverage provisions in personal automobile insurance policies reverse preempts the FAA; Am. Health & Life Ins. Co. v. Heyward, 272 F. Supp.2d 578, (D.S.C. 2003). South Carolina law prohibiting mandatory arbitration provisions in insurance contracts reverse preempts the FAA.

[15] Record, Exhibit 3 to Plaintiffs' Objection to Defendant Old Republic Home Protection Company's Motion to Stay Order Pending Appeal.

[16] Id.

[17] Record, Exhibit 4 to Plaintiffs' Plaintiffs' Objection to Defendant Old Republic Home Protection Company's Motion to Stay Order Pending Appeal, Record.

[18] Record, Exhibit B to Defendant Old Republic Home Protection Co., Inc.'s Motion to Stay and Compel Arbitration, and Brief in Support.

[19] Record, Exhibit 2, Defendant Old Republic Home Protection Co., Inc.'s Motion to Stay and Compel Arbitration, and Brief in Support, William B. Sparks and Donna Sparks, Plaintiffs v. Old Republic Home Protection Company, Inc., Defendant, CJ-16-795, District Court of Cleveland County.