CHOCTAW NATION v. ROBINS & MORTON CORP.
2022 OK CIV APP 22
Case Number: 119325
Decided: 09/30/2021
Mandate Issued: 06/15/2022
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2022 OK CIV APP 22, __ P.3d __

 

THE CHOCTAW NATION OF OKLAHOMA, Plaintiff/Appellee,
v.
(1) ROBINS & MORTON CORPORATION, Defendant/Appellant,
and
(2) JAMES CHILDERS, ARCHITECT, INC.,
(3) BUILDING & EARTH SCIENCES, INC.,
(4) BARKER & ASSOCIATES, INC.,
(5) VILHAUER ENTERPRISES, LLC,
(6) ALLISON LANDSCAPE AND POOL, LTD.,
(7) CHAVES-GRIEVES CONSULTING ENGINEERS, INC.,
(8) HOWARD-FAIRBAIN SITE DESIGN, INC.,
(9) HP ENGINEERING, INC.,
(10) BERNHARD MCC, LLC,
(11) AIRTECH CORPORATION,
(12) NORTHWEST CONTROLS SYSTEM, INC.,
(13) CLIMACOOL CORPORATION,
(14) EMPIRICAL ENERGY SOLUTIONS, LLC, Defendants.

APPEAL FROM THE DISTRICT COURT OF
BRYAN COUNTY, OKLAHOMA

HONORABLE MARK R. CAMPBELL, TRIAL JUDGE

REVERSED

P. Scott Hathaway, M. Freeman-Burney, Chris Warzecha, CONNER & WINTERS, LLP, Tulsa, Oklahoma,
Michael Burrage, John B. Norman, J. Renley Dennis, Austin R. Vance, WHITTEN BURRAGE, Oklahoma City, Oklahoma, for Plaintiff/Appellee,

Monty B. Bottom, Ashley M. Thul, FOLIART, HUFF, OTTAWAY & BOTTOM, Oklahoma City, Oklahoma, for Defendant/Appellant, Robins & Morton Corporation.

Trevor S. Pemberton, Presiding Judge:

¶1 Robins & Morton Corporation (R&M) seeks review of the trial court's denial of a Motion to Compel Mediation and, if Necessary, Arbitration and Dismiss or, Alternatively, Stay Litigation. The dispositive issue is whether a mandatory arbitration provision in a construction management contract between The Choctaw Nation of Oklahoma (Nation) and R&M is void under 12 O.S. § 1855

BACKGROUND

¶2 In 2015, the Nation and R&M entered into a Construction Management Contract (Contract) pursuant to which R&M was to provide to the Nation construction management services associated with the construction of a medical center. The Contract had the following stated purposes:

ARTICLE 1 PURPOSE AND INTENT

The primary purpose and intent of [the construction manager's consultations services part] of this procurement is to secure the services of a Construction Manager to provide design consultation on the project; to monitor project costs and endeavor to keep costs within established limitations; to schedule the project efficiently for the construction phases so that the project will be ready for occupancy at the earliest possible date; and to review the design of the project with the intent that the most efficient use of materials and methods will be employed to provide quality construction at the least cost.

. . .

ARTICLE I PURPOSE AND INTENT

The primary purpose and intent of [the construction management services part] of this procurement is to secure the services of a Construction Manager to organize and direct the complete construction of the project and to assume all risks and responsibilities of constructing the project within a Guaranteed Maximum Price and Time.

¶3 The Contract further contained acute detail about R&M's several obligations to fulfill the purpose(s) and intent(s). Not unlike many, if not most, other construction management contracts, the Contract also contained deep within the document language regarding insurance and bonds to be procured. Also attached were a Tribal Controlled Insurance Program (TCIP) Contract Addendum and a corresponding TCIP Procedures Manual.

¶4 After completion of construction, the Nation raised issues about alleged design and construction defects negligently caused by R&M and the other named defendants. Although they dispute timeframes and each other's cooperation, the Nation and R&M then exchanged communications regarding means by which to resolve the dispute.

¶5 With the dispute unresolved, the Nation later filed the underlying lawsuit, after which the Nation and R&M participated in an unsuccessful dispute resolution conference--a mechanism outlined in the provision of the Contract at issue. Once served with the lawsuit, R&M filed a motion to compel mediation/arbitration, praying for enforcement of the following contractual provision requiring that the dispute be submitted to mediation/arbitration:

4. DISPUTES

All disputes arising under this Construction Management Services contract that remain unresolved after good faith negotiations between the parties first shall be the subject of a dispute resolution conference. Either party may initiate a dispute resolution conference ("DRC") by providing written notice (the "Dispute Notice") to the other party. The written notice shall contain a short summary of the facts. Within five (5) days of receiving the Dispute Notice, a dispute resolution conference between Contracting Official, Project Director and the Construction Manager's representative(s) shall occur. If the parties are unable to resolve the dispute at the DRC, the parties will have an additional five (5) days from the date of the DRC to resolve the dispute. If either party fails to participate in the DRC or if no resolution is achieved by the DRC process, then the dispute shall be submitted to the American Arbitration Association as agreed to below.

If no resolution is achieved by the DRC process, the parties agree that unresolved dispute shall be submitted to the American Arbitration Association pursuant to the Construction Arbitration Rules and Mediation Procedures. The parties further agree that the mediation and arbitration procedures selected herein shall be the exclusive manner by which disputes that are still unresolved at the DRC stage are to be resolved.

. . .

(Disputes Clause).

The Contract also contained a fully executed attachment titled Dispute Resolution Fund Agreement, pursuant to which the Nation agreed to deposit with an escrow agent a certain sum to be held and disbursed in the event "an arbitration award (the "Award") is issued in favor of [R&M][.]"

¶6 The Nation argued in response to the motion to compel, that the arbitration mandate in the Disputes Clause was void under 12 O.S. § 1855

The Uniform Arbitration Act shall not apply to . . . contracts which reference insurance, except for those contracts between insurance companies.

According to the Nation, the insurance provisions and related attachments were essential to the Contract, and the Nation would not have contracted with R&M but for its agreement to comply with the insurance terms. Notably, however, consummation of the Contract was not specifically tied to insurance provisions. The Contract provided:

L-10 ACCEPTANCE OF OFFER

If the offer is accepted, the offeror will receive a notice of award of the Construction Management Contract for the work included under PART A. The notice of award will consummate the contract which will consist of the documents listed in the request for proposal.

¶7 The trial court denied the motion to compel mediation/arbitration, finding "that the arbitration clause that is the subject of the motion . . . is unenforceable" under 12 O.S. § 1855

STANDARD OF REVIEW

¶8 "As the party opposing the motion for arbitration, the [Nation] had the burden to 'show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue; an intention discernible from the statute's text or legislative history or an inherent conflict between arbitration and the statute's underlying purpose.'" Sparks v. Old Republic Home Protection Co. Inc., 2020 OK 42467 P.3d 680Thompson v. Bar-S Foods Co., 2007 OK 75174 P.3d 567de novo. Id.

ANALYSIS

¶9 The overarching issue to be dissected is whether the mandatory arbitration clause in the Contract is void under 12 O.S. § 1855

The Uniform Arbitration Act shall not apply to . . . contracts which reference insurance, except for those contracts between insurance companies.

To determine whether Section 1855(D) renders void the arbitration provision at issue, we must contemplate how the Federal Arbitration Act (FAA) and the McCarran-Ferguson Act affect the interpretation and application of Section 1855(D) in this context.

¶10 The FAA is the embodiment of policy favoring arbitration and provides in relevant part:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Oklahoma has adopted this similar language:

An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

12 O.S. § 1857

¶11 "Generally speaking, the [FAA] preempts any state law limiting the enforcement of arbitration." Sparks, 2020 OK 42Preston v. Ferrer, 552 U.S. 346, 352-53 (2008)). The United States Supreme Court, underscoring the clear policy favoring arbitration, has stated, "courts must place arbitration agreements on equal footing with other contracts . . . and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). The Oklahoma Supreme Court, in the Sparks Opinion critical to our analysis, has "acknowledge[d] that by virtue of the Supremacy Clause, 'we are governed by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to the extant Supreme Court jurisprudence.'" Sparks, 2020 OK 42Hollaway v. UNUM Life Ins. Co. of America, 2003 OK 9089 P.3d 1022

¶12 The McCarran-Ferguson Act provides in relevant part:

(a) State regulation

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) Federal regulation

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

15 U.S.C. § 1012.

¶13 The statute is clear. States may enact laws to regulate or tax the business of insurance, and federal laws shall not operate to supersede those state laws enacted to regulate the business of insurance. Applied here, 12 O.S. § 1855regulates or taxes the business of insurance. See Sparks, 2020 OK 42

¶14 The Oklahoma Supreme Court in Sparks--a case each party contends supports its position--thoroughly analyzed Section 1855(D) alongside the FAA and the McCarran-Ferguson Act, and held "that § 1855 of [the Oklahoma Uniform Arbitration Act] is a state law enacted for the purpose of regulating insurance, and thus, the McCarran-Ferguson Act applies precluding the Federal Arbitration Act from preempting conflicting state law." Id. at ¶ 35. According to the Nation, Sparks stands in part for the proposition that a contract's mere mention of the word insurance results in any arbitration provision contained therein being void under Section 1855(D). The Nation also oversimplifies the Oklahoma Supreme Court's analysis in Sparks by contending that the latter two of the following four dispositive questions answered by the Court, are dispositive here:

(1) whether a home warranty plan meets the definition of an insurance contract, (2) and if it is insurance, whether a forced arbitration clause in such a contract is unenforceable under the Oklahoma Uniform Arbitration Act, (3) whether 12 O.S. 2011 § 1855

Id. at ¶ 1. The Nation imparts no relevant significance to the Court's consideration of the first two inquiries.

¶15 R&M contrarily argues that the Sparks Court necessarily first determined that the home warranty contract was itself an insurance contract before the Court would (and did) hold that the arbitration provision contained therein was void under Section 1855(D). In other words, the analysis did not begin and end with only the latter two of the four issues addressed by the Sparks Court. We agree. Having determined that Section 1855(D) reverse preempts the FAA because Section 1855(D) regulates the business of insurance, the Sparks Court transitioned to "look more closely at the nature of the home warranty before [it] and examine[d] its nature in light of guidelines from the Supreme Court of the United States, Oklahoma statutes defining 'insurance,' and the wisdom of other Courts." 2020 OK 42Sparks Court not determined the home warranty met the definition of an insurance contract, it is evident the Court would not have found the arbitration provision therein to be void under Section 1855(D).

¶16 For numerous reasons, the Sparks Court held that, although the home warranty was not explicitly denominated an insurance contract, it was in fact a contract referencing insurance for purposes of Section 1855(D). The entity which issued the warranty admitted in other litigation and for a time in the Sparks proceeding that the warranty was insurance. Id. at ¶¶ 27 and 30. In an annual review, the parent company of the defendant entity listed the latter "as one of its 27 'insurance companies[.]'" Id. at ¶ 28. The Court further pointed out that the home warranty, without more, "provide[d] for the transfer of risk that [was] a central and important element of the plan." Id. at ¶ 31. The Court also factored McMullan v. Enterprise Financial Group, Inc., 2011 OK 7247 P.3d 1173Id. at ¶¶ 32-33. The focus of the Sparks Court's analysis was ineluctably to determine the nature of the contract at issue, not to assess whether the home warranty contract merely contained the word "insurance" or a section requiring insurance. Our pursuit must be the same in order for Section 1855(D) to survive preemption.

¶17 The Contract derived from R&M's successful offer responsive to the Nation's solicitation of bids for the construction of the Choctaw Nation Regional Medical Center. By its own terms, the Contract was for "Construction Management Services." As quoted in the Articles above, the Contract made plain its purpose. Succinctly put, R&M was tasked with overseeing and managing the complex construction of a medical center. The Contract contains more than sixty pages of detail about all R&M was to do to fulfill the purpose(s) and intent(s). The Contract also contained language and attachments addressing insurance and bonds to be procured. Although procurement of the insurance and bonds in accordance with the Contract would ultimately result in risks being shifted, such adjustment of risks was not, under any fair reading, the primary function or nature of the Contract. The Contract was not transformed into the functional equivalent of an insurance contract due to the mere descript essence of the insurance provisions.

¶18 To be sure, the Oklahoma Supreme Court has not found that 12 O.S. § 185512 O.S. § 1855

¶19 Because we hold that the Disputes Clause is valid and enforceable, we need not address R&M's additional proposition that the Nation waived its position and is estopped from seeking to avoid the Disputes Clause by having perhaps taken steps to institute the resolution processes contained therein. The Nation's waiver argument likewise has no impact on the outcome. The Nation argued in its Answer Brief that R&M waived its right to engage in the processes outlined in the Disputes Clause because R&M purportedly did not timely participate in a dispute resolution conference. Even if either party failed to participate in the dispute resolution conference, the Nation's waiver argument fails as the Disputes Clause contains the following language still mandating arbitration:

If either party fails to participate in the DRC or if no resolution is achieved by the DRC process, then the dispute shall be submitted to the American Arbitration Association as agreed to below.

CONCLUSION

¶20 We hold that the Construction Management Contract does not meet the definition of insurance for purposes of 12 O.S. § 1855

SWINTON, C.J., and BELL, J., concur.

FOOTNOTES