OSCN Found Document:BABY F. v. OKLAHOMA COUNTY DISTRICT COURT

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BABY F. v. OKLAHOMA COUNTY DISTRICT COURT
2015 OK 24
Case Number: 113527
Decided: 04/21/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 24, __ P.3d __

 

IN RE: BABY F., Petitioner,
v.
OKLAHOMA COUNTY DISTRICT COURT and THE HONORABLE LISA TIPPING DAVIS, Respondents.

APPLICATION FOR ORIGINAL JURISDICTION AND PETITION FOR WRIT OF PROHIBITION

¶0 Petitioner Baby F., through his attorney, requested this Court assume original jurisdiction and issue a writ of prohibition forbidding the trial court from authorizing a change in his resuscitation status from full code to allow-natural-death pursuant to 10A O.S. 2011 § 1-3-102(C)(2). Petitioner alleged that by failing to provide for an evidentiary standard and fact-finding, 10A O.S. 2011 § 1-3-102(C)(2) violated the requirements of substantive due process. We agree, and determine: 1) that though Petitioner died during the pendency of these proceedings, this cause falls within recognized exceptions to the mootness doctrine; and 2) in order to comply with the requirements of due process, before a withdrawal of life-sustaining medical treatment or the denial of the administration of cardiopulmonary resuscitation on behalf of a child in DHS custody may be authorized under 10A O.S. 2011 § 1-3-102(C)(2), the court must determine by clear and convincing evidence that doing so is in the best interest of the child.

ORIGINAL JURISDICTION ASSUMED; MOTION TO DISMISS THIS 
CAUSE AS MOOT DENIED; WRIT OF PROHIBITION ISSUED

Robert A. Ravitz, Public Defender of Oklahoma County, and Andrea Digilio Miller, Assistant Public Defender, Oklahoma City, Oklahoma, for Petitioner.
Jane A. Brown, Assistant District Attorney, Oklahoma City, Oklahoma, for Respondents.

COMBS, V.C.J.:

RELEVANT FACTS AND PROCEDURAL HISTORY

¶1 Baby F was one of several siblings the State of Oklahoma sought to take into its emergency custody in an Application to Take Minor Children Into Emergency Custody filed on April 4, 2013. At that time, three-month-old Baby F had allegedly been diagnosed with several anomalies and genetic issues.[1] The State alleged that the mother appeared to be under the influence of substances and the family could not care for the children, including Baby F. The State also made other allegations concerning the neglect of Baby F's siblings.

¶2 In response to the State's request, the district court issued an Order to Take Minor Child(ren) Into Emergency Custody on April 4, 2013. The State then filed a petition, on April 15, 2013, alleging Baby F and his siblings were deprived children and sought to terminate the parental rights of Baby F's parents.

¶3 On June 4, 2013, the parents stipulated to the State's petition and the children, including Baby F, were made wards of the court as deprived children. The court ordered an individualized treatment plan for both the mother and father on July 9, 2013. The State filed an amended petition on September 30, 2013, alleging that the parents failed to correct the conditions leading to the children's adjudication as deprived and again seeking termination of their parental rights.

¶4 On November 19, 2014, the State received a letter from Dr. Michael Johnson, a pediatric hospitalist at The Children's Center Pediatric Rehabilitation Hospital where Baby F had been placed to see to his special medical needs. In his letter, Dr. Johnson expressed concern about Baby F's continued deteriorating status and the need to consistently transfer him to the Children's Hospital at OU medical center so he could be placed on a ventilator. Dr. Johnson noted Baby F's prognosis as "grim", and stated that the consensus amongst multiple staff members was that care should shift from aggressive management to palliative so as not to prolong unnecessary suffering and discomfort. Accordingly, Dr. Johnson requested a change in Baby F's resuscitation status from full code to Allow Natural Death.[2]

¶5 Based on the letter from Dr. Johnson, the State requested a hearing through an oral application that was heard before Judge Lisa Tipping Davis on December 10, 2014. At the hearing, Dr. Johnson testified as to Baby F's deteriorating condition, noting the numerous conditions identified when Baby F was born prematurely, and his continued respiratory troubles. According to Dr. Johnson, Baby F's acute respiratory events began to increase over time, necessitating several transfers to another facility, and the staff began to feel conflicted that they might be doing more to Baby F than for Baby F. Transcript of DNR Proceedings, December 10, 2014, pp. 7-8. After hearing the Testimony of Dr. Johnson, and with the support of Baby F's parents, the trial court granted the State's request to change Baby F's status to DNR pursuant to 10A O.S. 2011 § 1-3-102(C)(2). The trial court granted the State's request over Baby F's objection, and stayed its order to allow Baby F's attorney to file this original action.

¶6 Baby F filed an application to assume original jurisdiction and petition for a writ of prohibition with this Court on December 29, 2014. However, while this original action was pending, the State received a letter from Dr. Timothy Carroll on January 5. Dr. Carroll was Baby F's physician of record at The Children's Hospital at OU Medical Center. Dr. Carroll stated that Baby F's condition had deteriorated to the point where he could not survive without being in a medically induced coma and medically paralyzed on a life supporting ventilator, and there was no reason to suspect the situation would improve. Dr. Carroll stated the child was suffering and that further life sustaining therapy was not appropriate.

¶7 Accordingly, an emergency hearing was held on January 9, 2015. Based on Dr. Carroll's testimony, the State moved to dismiss Baby F. from the deprived petition and requested that the court place the child in the custody of his mother and father for purpose of their consent to the DNR order, thereby negating the need for the trial court's approval under 10A O.S. 2011 § 1-3-102(C)(2). The State also requested the court vacate the stay it previously issued in order to proceed. In a January 9, 2015 order, the trial court vacated its previous stay and dismissed the deprived child proceeding only as to Baby F and returned Baby F to his parents' custody for purposes of the DNR order. Baby F died on January 10, 2015, at Children's Hospital of Oklahoma.

I.
JURISDICTION

¶8 This Court assumes original jurisdiction in the exercise of our general superintending control over all inferior courts and all agencies, commissions and boards created by law under Okla. Const. Art. 7, § 4. James v. Rogers, 1987 OK 20, ¶2, 734 P.2d 1298. Before a writ of prohibition may issue, a petitioner must show: 1) a court, officer, or person has or is about to exercise judicial or quasi-judicial power; 2) the exercise of said power is unauthorized by law; and 3) the exercise of that power will result in injury for which there is no other adequate remedy. James v. Rogers, 1987 OK 20, ¶5; Umholtz v. City of Tulsa, 1977 OK 98, ¶6, 565 P.2d 15. Where the exercise of judicial power violates fundamental law, this Court will issue a writ of prohibition to control the performance of judicial proceedings. Lepak v. McClain, 1992 OK 166, ¶4 , 844 P.2d 852. See Atchison, T. & S.F. Ry. Co. v. Love, 1911 OK 352, ¶5, 119 P. 207.

¶9 Given the unique facts of this cause, related above, Baby F. has satisfied the requirements necessary for this Court to assume original jurisdiction and issue a writ of prohibition. A proceeding under 10A O.S. 2011 § 1-3-102(C)(2), applied to Baby F., would have been an infringement of his fundamental constitutional rights for which appeal could not be an adequate remedy.

¶10 This Court must also address the question of mootness. The State, as the real party in interest, moved to dismiss this original proceeding as moot on January 13, 2015, after the death of Baby F. Counsel for Baby F., however, contends this cause falls within recognized exceptions to the mootness doctrine and requests the State's motion to dismiss be denied.

¶11 The mootness doctrine applies to both appellate and original jurisdiction proceedings. Chandler v. U.S.A., Inc. v. Tyree, 2004 OK 16, ¶11, 87 P.3d 598. See State ex rel. Dept. of Human Services v. Colclazier, 1997 OK 134, ¶5 n. 4, 950 P.2d 824. The concept of mootness is linked to circumstances that result in a court's inability to grant effective relief, where any opinion in that controversy would possess characteristics of a hypothetical or advisory opinion. Chandler, 2004 OK 16, ¶12; Westinghouse Elec. Corp. v. Grand River Damn Authority, 1986 OK 20, ¶17, 720 P.2d 713. It is a long-established rule that this Court will not consume its time by deciding abstract propositions of law or moot issues. State ex rel. Oklahoma Firefighters Pension and Retirement System v. City of Spencer, 2009 OK 73, ¶4, 237 P.3d 125; American Ins. Ass'n v. State Indus. Comm'n, 1987 OK 107, ¶6, 745 P.2d 737.

¶12 However, Oklahoma recognizes two distinct exceptions to the mootness doctrine: 1) when an appeal presents a question of broad public interest, and 2) when the challenged event is capable of repetition, yet evading review. Scott v. Oklahoma Secondary School Activities Ass'n, 2013 OK 84, ¶14, 313 P.3d 891; City of Spencer, 2009 OK 73, ¶4; Payne v. Jones, 1944 OK 86, ¶¶ 3-5, 146 P.2d 113. The application of these exceptions by this Court depends on the facts presented and the policy considerations and we will only apply them where the practical considerations indicate that doing so would avoid, rather than prolong confusion. Scott, 2013 OK 84, ¶14; In Re: Guardianship of Doornbos, 2006 OK 94, ¶4, 151 P.3d 126.

¶13 This cause falls firmly within both recognized exceptions to the mootness doctrine. First, the constitutional adequacy of proceedings under 10A O.S. 2011 § 1-3-102(C)(2) is a question of broad public interest. The application of 10A O.S. 2011 § 1-3-102(C)(2) is, quite literally, a matter of life or death for certain children in the State's custody. Second, this is a prime example of a situation that is capable of repetition, yet likely to continue to evade review. The facts of this case highlight the medical immediacy of the situations under which 10A O.S. 2011 § 1-3-102(C)(2) is likely to be invoked, and the short duration of any live controversy places this cause squarely within the second exception to the mootness doctrine. Policy considerations dictate the Court resolve the issues raised by this cause now, to avoid future confusion and safeguard the interests of medically fragile children that may find themselves in Baby F's position.

II.
DUE PROCESS REQUIRES A COURT AUTHORIZE THE 
WITHDRAWAL OF LIFE-SUSTAINING MEDICAL TREATMENT OR 
THE DENIAL OF THE ADMINISTRATION OF CARDIOPULMONARY
RESUSCITATION PURSUANT TO 10A O.S. 2011 § 1-3-102(C)(2) ONLY
AFTER DETERMINING BY CLEAR AND CONVINCING EVIDENCE 
THAT DOING SO IS IN THE BEST INTEREST OF THE CHILD.

¶14 At issue in this cause is the constitutional adequacy of proceedings conducted pursuant to 10A O.S. 2011 § 1-3-102(C)(2). Title 10A O.S. 2011 § 1-3-102 concerns the authority of the Department of Human Services (DHS) to consent to medical care for children in its custody, and § 1-3-102(c)(2) specifically provides:

[i]n no case shall the Department consent to a child's abortion, sterilization, termination of life support or a "Do Not Resuscitate" order. The court may authorize the withdrawal of life-sustaining medical treatment or the denial of the administration of cardiopulmonary resuscitation on behalf of a child in the Department's custody upon the written recommendation of a licensed physician, after notice to the parties and a hearing.

¶15 Baby F. alleges that 10A O.S. 2011 § 1-3-102(C)(2) fails to comport with the requirements of due process encompassed by the Constitutions of Oklahoma and the United States. The Fourteenth Amendment of the United States Constitution ensures no person may be deprived of life, liberty, or property without due process of law. Specifically, section one provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

Similarly, Okla. Const. Art. 2, § 7 provides "[n]o person shall be deprived of life, liberty, or property, without due process of law." The due process clauses of the United States and Oklahoma Constitutions provide that citizens cannot be deprived of their rights to life, liberty or property without first receiving notice and a meaningful opportunity to appear and be heard. Daffin v. State ex rel. Oklahoma Dept. of Mines, 2011 OK 22, ¶16, 251 P.3d 741. See In Re Adoption of K.P.M.A., 2014 OK 85, ¶17, 341 P.3d 38; Booth v. McKnight, 2003 OK 49, ¶¶20-21, 70 P.3d 855.[3]

¶16 Baby F. does not dispute that 10A O.S. 2011 § 1-3-102(C)(2) meets the minimum procedural requirements of the Oklahoma and United States Constitutions by requiring notice and a hearing. Instead, Baby F. asserts that the statute is lacking in substantive due process protection. Substantive due process encompasses a general requirement that all government actions have a fair and reasonable impact on the life, liberty, or property of the person affected, and arbitrary action is therefore proscribed. The City of Edmond v. Wakefield, 1975 OK 96, ¶5, 537 P.2d 1211 (citing Griswold v. Connecticut, 381 U.S. 479, 511-512, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). The substantive component of the due process clause bars certain governmental action despite the adequacy of procedural protections provided. Nelson v. Nelson, 1998 OK 10, n. 26, 954 P.2d 1219; Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In determining whether an action violates substantive rights, a balance must be struck between the right protected and the demands of society. Matter of Adoption of J.R.M., 1995 OK 79, 899 P.2d 1155; Youngberg v. Romeo, 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982). In sum:

"Substantive due process" review is "the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process [procedural due process] by which the government applies the rule to an Individual." 

Gladstone v. Bartlesville Indep. School Dist. No. 30 (I-30), 2003 OK 30, n. 55, 66 P.3d 442 (quoting RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 14.6 at 356 (2nd Ed.1992)).

A. The Proper Evidentiary Standard for a Determination Under 10A O.S. 2011 § 1-3-102(C)(2) is Clear and Convincing Evidence.

¶17 Baby F. alleges 10A O.S. 2011 § 1-3-102(C)(2) does not comport with the requirements of substantive due process because it permits a court to authorize a DNR order for a child in state custody without addressing what burden of proof applies and what findings the court must make. The standard of proof is a matter of due process and serves to "allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decisions." Johnson v. Bd of Governors of Registered Dentists of State of Oklahoma, 1996 OK 41, ¶17, 913 P.2d 1339 (quoting Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). The Supreme Court of the United States has previously stated:

"[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication."

Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 282, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (quoting Addington, 441 U.S. at 423). The Court further noted it has:

"mandated an intermediate standard of proof--'clear and convincing evidence'--when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'"

Cruzan, 497 U.S. at 282 (quoting Santosky v. Kramer, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

¶18 In Cruzan, the Supreme Court of the United States addressed whether the United States Constitution forbid Missouri from requiring clear and convincing evidence as the standard of proof in proceedings where a guardian seeks to discontinue nutrition and hydration of a person diagnosed to be in a persistent vegetative state. 497 U.S. at 284. The Court in Cruzan determined that the clear and convincing evidence standard was permissible, and further noted:

[w]e think it self-evident that the interests at stake in the instant proceedings are more substantial, both on an individual and societal level, than those involved in a run-of-the-mine civil dispute. But not only does the standard of proof reflect the importance of a particular adjudication, it also serves as "a societal judgment about how the risk of error should be distributed between the litigants." Santosky, supra,455 U.S. at 755, 102 S.Ct., at 1395; Addington, supra, 441 U.S., at 423, 99 S.Ct., at 1807-1808. The more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision. We believe that Missouri may permissibly place an increased risk of an erroneous decision on those seeking to terminate an incompetent individual's life-sustaining treatment. An erroneous decision not to terminate results in a maintenance of the status quo; the possibility of subsequent developments such as advancements in medical science, the discovery of new evidence regarding the patient's intent, changes in the law, or simply the unexpected death of the patient despite the administration of life-sustaining treatment at least create the potential that a wrong decision will eventually be corrected or its impact mitigated. An erroneous decision to withdraw life-sustaining treatment, however, is not susceptible of correction. In Santosky, one of the factors which led the Court to require proof by clear and convincing evidence in a proceeding to terminate parental rights was that a decision in such a case was final and irrevocable. Santosky, supra, 445 U.S., at 759, 102 S.Ct., at 1397-1398. The same must surely be said of the decision to discontinue hydration and nutrition of a patient such as Nancy Cruzan, which all agree will result in her death.

497 U.S. at 283 (emphasis added).

Cruzan addressed the withdrawal of life-support for a previously competent adult, not a minor child in the state's custody. The decision also focused on whether Missouri's clear and convincing evidence standard was constitutionally permissible, rather than whether it was required.

¶19 Cruzan, however, is not this Court's only source of guidance on this issue. This Court has previously held that substantive due process forbids the termination of parental rights in the absence of a compelling state interest in the form of specific findings of existing or threatened harm to the child. In Re Baby Girl L., 2002 OK 9, ¶23, 51 P.3d 544; Matter of J.N.M., 1982 OK 153, ¶12, 655 P.2d 1032. In C.G., Matter of, 1981 OK 131, ¶¶15-19, 637 P.2d 66, this court applied the clear and convincing evidence standard to parental bond severance. We noted that the clear and convincing evidence standard is traditionally applied in equity for allocation of the risk of error when important interests are at stake. C.G., Matter of, 1981 OK 131, ¶16. Discussing the interests at stake, this Court determined:

parental-status termination calls for such an extreme public-law redress that due process under Art. 2 § 7, Okl.Const. requires of the state proof more substantial than that afforded by the standard of the clear weight of the evidence. The law's policy must demonstrate the very same solicitude in guarding against a mistaken parental-bond severance as it does in its vigilant protection against wrongful mental health commitments. The clear-and-convincing standard balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders. It places an [637 P.2d 71] appropriately heavy burden upon the § 1130 petitioner (termination-seeking party) to overcome the law's policy which identifies the child's best interest with that of its natural parents. We hence hold that in § 1130 litigation the termination-seeking claimant must prove by clear-and-convincing evidence parental potential for harm to the child by abuse or neglect

C.G., Matter of, 1981 OK 131, ¶17.

¶20 There can be no doubt that in proceedings conducted under 10A O.S. 2011 § 1-3-102(C)(2) there are interests at stake more substantial than those involved in the average civil dispute, interests far more substantial than the mere loss of money. See Cruzan, 497 U.S. at 282-283. At issue, quite literally, is the potential life or death of children in the custody of the State of Oklahoma. The cost of error in this situation is high, much as it was in Cruzan:

[a]n erroneous decision not to terminate results in a maintenance of the status quo, with at least the potential that a wrong decision will eventually be corrected or its impact mitigated by an event such as an advancement in medical science or the patient's unexpected death. However, an erroneous decision to withdraw such treatment is not susceptible of correction.

497 U.S. at 263.

Given the interests at stake, the risk of error must be placed upon the party seeking to deny resuscitative measures. The State of Oklahoma, through DHS, must satisfy the clear and convincing evidence standard traditionally applied by this Court when important interests are at stake. See C.G., Matter of, 1981 OK 31, ¶16.[4] As it is difficult to imagine more important interests being at stake in a civil matter than those implicated in the decision to deny life-sustaining treatment for a child in state custody, clear and convincing evidence is the only Constitutionally acceptable standard to satisfy the requirements of due process.

B. The Paramount Consideration in any Proceeding Under 10A O.S. 2011 § 1-3-102(C)(2) Must Be the Best Interest of the Child. 

¶21 Title 10A O.S. 2011 § 1-3-102(C)(2) also fails to provide any statutory criteria for what the State must prove by clear and convincing evidence in order to satisfy its burden of proof. In cases such as Cruzan, involving an incompetent adult who at one time was competent, the criteria could simply be clear and convincing evidence of the individual's wishes while competent. See 497 U.S. at 280. As noted, however, the specific facts of Cruzan are not directly applicable to this case, involving as it does a minor child in state custody, rather than an adult who was at one point competent to make decisions regarding medical care.

¶22 Baby F. suggests this court look to the Hydration and Nutrition for Incompetent Patients Act, 63 O.S. § 3080.1 et seq. for guidance. Specifically, Baby F. cites: 1) 63 O.S. 2011 § 3080.3, creating a presumption that every incompetent patient has directed his health care providers to provide him with hydration and nutrition to a degree that is sufficient to sustain life; and 2) 63 O.S. 2011 § 3080.4, which sets out circumstances under which the presumption does not apply.[5] While The Hydration and Nutrition for Incompetent Patients Act does include minor children in its definition of incompetent patients,[6] it is not directly applicable to this cause. However, the Legislature has already provided the necessary guidance within the Oklahoma Children's Code, itself.

¶23 The State of Oklahoma possesses a right, in the role as parens patriae, to protect its infant citizens from harm. In Re Baby Girl L, 2002 OK 9, ¶23, 51 P.3d 544. The Oklahoma Children's Code, in which 10A O.S. 2011 § 1-3-102 is found, provides the criteria for how the state exercises that right. Title 10A O.S. Supp. 2014 § 1-1-102(E) (emphasis added) provides:

It is the intent of the Legislature that the paramount consideration in all proceedings within the Oklahoma Children's Code is the best interests of the child. 

Accordingly, to authorize withdrawal of life-sustaining medical treatment or the denial of the administration of cardiopulmonary resuscitation pursuant to 10A O.S. 2011 § 1-3-102(C)(2), the court must find by clear and convincing evidence that doing so is in the best interest of the child.

CONCLUSION

¶24 The requirements of due process necessitate that a court authorize the withdrawal of life-sustaining medical treatment or the denial of the administration of cardiopulmonary resuscitation on behalf of a child in DHS custody, pursuant to 10A O.S. 2011 § 1-3-102(C)(2), only after determining by clear and convincing evidence that it is in the best interest of the child to do so. Given the nature of the interests at stake, any lower standard is insufficient to safeguard the fundamental rights of children in the State's custody. Though Baby F. is now deceased, this cause falls within recognized exceptions to the mootness doctrine because it is a matter of broad public interest and is capable of repetition while evading review. Accordingly, the Court will act now to safeguard the rights of other minor children in State custody who may find themselves in similar circumstances.

¶25 We issue relief in the nature of prohibition, and direct that the trial court, in all future matters, shall not authorize the withdrawal of life-sustaining medical treatment or the denial of the administration of cardiopulmonary resuscitation on behalf of a child in DHS custody without determining by clear and convincing evidence that doing so is in the best interest of the child.

ORIGINAL JURISDICTION ASSUMED; MOTION TO DISMISS THIS
CAUSE AS MOOT DENIED; WRIT OF PROHIBITION ISSUED

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, and GURICH, JJ., concur.

WINCHESTER and TAYLOR, JJ., concur in result.

FOOTNOTES

[1] In its Application to Take Minor Children Into Emergency Custody, the State alleged that Baby F had been diagnosed with anomalies, genetic issues, and cardiac and respiratory issues. The State further alleged that due to these issues, Baby F required a cardiac and respiratory monitor, oxygen, and suctioning. Baby F also has a small head, abnormal brain, obstructive sleep apnea, and required G tube feedings.

[2] According to Dr. Johnson, Allow Natural Death is his institution's equivalent to what is commonly referred to as Do Not Resuscitate, or DNR.

[3] Okla. Const. Art. 2, § 7 has a definitional sweep that is coextensive with its federal counterpart. In Re Adoption of K.P.M.A., n. 3; Gladstone v. Bartlesville Indep. School Dist. No. 30, 2003 OK 30, n. 16, 66 P.3d 442. However, this Court's holdings with regard to state constitutional questions are based on Oklahoma law, which provides bona fide, separate, adequate and independent grounds for our decision. In Re Adoption of K.P.M.A., n. 3; Daffin, 2011 OK 22, n. 21; Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶51, 958 P.2d 128.

[4] This Court determined in C.G., Matter of, that the "law's policy must demonstrate the very same solicitude in guarding against a mistaken parental-bond severance as it does in its vigilant protection against wrongful mental health commitments." 1981 OK 131, ¶17. Since a child's death after the issuance of a DNR order would function in a very real sense as a severance of the parental bond, it would be absurd not to apply the clear and convincing evidence standard to the determination from the viewpoint of the parent's rights, let alone those of the minor child.

[5] Title 63 O.S. 2011 § 3080.4 provides several different criteria that can defeat the presumption. One scenario is clear and convincing evidence of the incompetent patient's desires while competent. 63 O.S. 2011 § 3080.4(A)(2). Another scenario, provided for in 63 O.S. 2011 § 3080.4(A)(7), relies on the judgment of the treating physicians, providing the presumption does not apply if:

7. In the reasonable medical judgment of the incompetent patient's attending physician and a second consulting physician:

a. the incompetent patient is chronically and irreversibly incompetent,

b. the incompetent patient is in the final stage of a terminal illness or injury, and

c. the death of the incompetent patient is imminent.

It is this provision Baby F. believes might provide criteria for a court to determine the necessity of a DNR order in cases like Baby F.'s.

[6] 63 O.S. 2011 § 3080.2(4)(a).

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 20, 734 P.2d 1298, 58 OBJ 716, James v. Rogers
Discussed at Length
 1987 OK 107, 745 P.2d 737, American Ins. Ass'n v. State Indus. Com'n
Discussed
 1998 OK 10, 954 P.2d 1219, 69 OBJ 452, NELSON v. NELSON
Discussed
 1992 OK 166, 844 P.2d 852, 63 OBJ 3757, Lepak v. McClain
Discussed
 2002 OK 9, 51 P.3d 544, 73 OBJ 546, IN THE MATTER OF BABY GIRL L.
Discussed at Length
 1995 OK 79, 899 P.2d 1155, 66 OBJ 2400, In the Matter of the Adoption of J.R.M.
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed at Length
 2003 OK 49, 70 P.3d 855, BOOTH v. McKNIGHT
Discussed
 2004 OK 16, 87 P.3d 598, CHANDLER (U.S.A.), INC. v. TYREE
Discussed at Length
 1996 OK 41, 913 P.2d 1339, 67 OBJ 1027, Johnson v. Bd. Of Gov. of Registered Dentists
Discussed
 2006 OK 94, 151 P.3d 126, IN THE MATTER OF THE GUARDIANSHIP OF DOORNBOS
Discussed
 2009 OK 73, 237 P.3d 125, STATE ex rel. OKLA. FIREFIGHTERS PENSION AND RETIREMENT SYSTEM v. CITY OF SPENCER
Discussed at Length
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed at Length
 1975 OK 96, 537 P.2d 1211, CITY OF EDMOND v. WAKEFIELD
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed at Length
 1977 OK 98, 565 P.2d 15, UMHOLTZ v. CITY OF TULSA
Discussed
 2014 OK 85, IN RE ADOPTION OF K.P.M.A.
Cited
 1981 OK 31, 627 P.2d 432, Consolidated Equipment Sales v. First Bank & Trust Co. of Guthrie
Cited
 1997 OK 134, 950 P.2d 824, 68 OBJ 3526, STATE ex rel. DEPT. OF HUMAN SERVICES v. COLCLAZIER
Discussed
 1981 OK 131, 637 P.2d 66, C. G., Matter of
Discussed at Length
 1982 OK 153, 655 P.2d 1032, J.N.M., Matter of
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1944 OK 86, 146 P.2d 113, 193 Okla. 609, PAYNE v. JONES
Discussed
 1911 OK 352, 119 P. 207, 29 Okla. 738, ATCHISON T. & S. F. RY. CO. v. LOVE
Discussed
 1986 OK 20, 720 P.2d 713, 57 OBJ 1155, Westinghouse Elec. Corp. v. Grand River Dam Authority
Discussed
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 3080.1, Short Title
Cited
 63 O.S. 3080.2, Definitions
Cited
 63 O.S. 3080.3, Presumption Involving Incompetent Patient's Health Care Providers
Cited
 63 O.S. 3080.4, Inapplicability of Presumption
Discussed at Length