IN THE MATTER OF I.T.S.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF I.T.S.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF I.T.S.
2021 OK 38
490 P.3d 127
Case Number: 117827
Decided: 06/22/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 38, 490 P.3d 127

 
 

IN THE MATTER OF I.T.S., I.M.S., and R.E.S., Deprived Children,

STATE OF OKLAHOMA, Petitioner/Appellee,
v.
IRIS M. STACY, Respondent/Appellant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

Honorable Rocky Powers, Trial Judge

¶0 Appellant Iris M. Stacy (Mother) appealed a trial court judgment entered on a jury verdict terminating her parental rights for failure to correct the conditions which led to the deprived adjudication of I.T.S., I.M.S., and R.E.S. The Court of Civil Appeals (COCA), Div. IV, affirmed the judgment by unpublished opinion. Mother's petition for certiorari seeks examination of COCA's decision that the trial court committed no reversible error by discharging Mother's court-appointed counsel at the conclusion of the disposition hearing, which left her without legal representation until counsel was reappointed following the filing of State's petition to terminate her parental rights over two years later. We granted certiorari to address a question of first impression: Upon request by an Indian child's parent for counsel in a deprived child proceeding, and a finding of indigency, whether the federal Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., requires court-appointed counsel for the parent at all stages of the deprived child proceeding. We hold that § 1912(b) of ICWA requires, upon request and a finding of indigency, the appointment of counsel at all stages of the deprived child proceeding.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT JUDGMENT REVERSED;
CAUSE REMANDED.

Chris D. Jones, JONES LAW FIRM, Durant, Oklahoma, Attorney for Respondent/Appellant Iris M. Stacy,

Whitney Paige Kerr, BRYAN COUNTY DISTRICT ATTORNEY'S OFFICE, Durant, Oklahoma, Attorney for Petitioner/Appellee State of Oklahoma,

D. Michael Haggerty, II, HAGGERTY LAW OFFICE, PLLC, 716 W. Evergreen Street, Durant, Oklahoma, Attorney for Minor Children

ROWE, J.:

¶1 Appellant Iris M. Stacy (Mother) seeks certiorari review of an unpublished opinion by the Court of Civil Appeals (COCA) that affirmed the trial court's judgment terminating her parental rights to I.T.S., I.M.S., and R.E.S. (Children). At issue is the trial court's sua sponte discharge of Mother's court-appointed counsel at the conclusion of the disposition hearing, which left her without representation until State filed its petition to terminate her parental rights over two years later.[1] She argues the trial court's failure to provide her legal representation between the disposition and the filing of the petition to terminate her parental rights--a time period of 798 days--is contrary to the federal Indian Child Welfare Act (ICWA), 25 U.S.C. § 1912(b) (2018).

I. RELEVANT FACTS

¶2 This deprived child proceeding began in April 2015, when the children's school counselor reported they had expressed fears of their father, whom Mother had recently allowed to return to their home in Durant, Oklahoma. Child Welfare Services of the Oklahoma Department of Human Services (DHS) confirmed the father's violent criminal history and the parents' history of domestic violence.[2] State applied for an emergency order to remove the Children from their home,[3] which the trial court granted after a hearing held April 24, 2015.[4]

¶3 State filed a petition alleging Children were deprived due to domestic violence, exposure to substance abuse, and their parents' failure to provide a safe and stable home. Children were subsequently adjudicated deprived as to their father based on his stipulation to State's deprived petition. On June 18, 2015, five days before the hearing to adjudicate the children deprived as to Mother, she applied for a court-appointed attorney. The trial court appointed counsel for Mother on June 22, 2015. Mother stipulated to State's deprived petition, and the trial court adjudicated the children deprived on June 23, 2015. Following the disposition hearing held the same day, the trial court's order states, in relevant part, "Counsel discharged, subject to re-app[ointmen]t."[5]

¶4 Twenty-six months passed before State commenced termination proceedings. During this time, the children's first relative foster placement could not handle all three teenage children, necessitating their separation into separate relative foster placement homes. Over the same period, Mother successfully worked the court-ordered Individual Service Plan (ISP) prepared to help her correct the conditions that led to the children's deprived status. In May 2016, the trial court authorized DHS to begin trial reunification "when appropriate," which occurred sometime before July 22, 2016.[6] The children were reunited with Mother for approximately one year.

¶5 In August of 2017, a caseworker went to Mother's home to check on her daughters' absence from school. The daughters told the worker their Mother was not home, she had used their school clothes money to bail their father out of jail, and since that time, she had allowed father to stay in their home. DHS ended the trial reunification August 23, 2017.

¶6 State filed a petition to terminate the parental rights of Mother and Father on August 29, 2017. The petition alleged two termination grounds against both parents--10A O.S.Supp.2015 § 1-4-904(B)(5) (failure to correct the conditions which led to the deprived adjudication) and § 1-4-904(B)(16) (children in foster care for fifteen (15) of the twenty-two (22) months preceding the filing of the parental rights termination petition).[7] On September 7, 2017, the trial court granted Mother's second application for court-appointed counsel, which was filed that same day. The trial court terminated Father's parental rights by default on October 31, 2017.

¶7 The jury trial on State's petition to terminate Mother's parental rights was held January 29-30, 2018. The jury rendered separate verdicts finding that termination of Mother's parental rights was in the children's best interest because she had failed to correct the conditions that led to their deprived status. The jury identified the conditions that were not corrected as "[u]nsafe, unstable and inappropriate home environment, substance abuse, and domestic violence" by checkmarks on all three verdicts.

¶8 The journal entry of judgment terminating Mother's parental rights, the preparation of which was delayed for a full year, was filed on January 30, 2019. On February 28, 2019, an amended judgment terminating Mother's parental rights was filed. Mother filed her appeal on the same date.[8] The appeal was assigned to Division IV of the Oklahoma Court of Civil Appeals, which affirmed the amended judgment but remanded with directions.[9] This Court granted Mother's Petition for Certiorari on May 4, 2020.

II. STANDARD OF REVIEW

¶9 Mother's certiorari petition challenges COCA's interpretation of ICWA regarding appointment of counsel for an indigent parent of an Indian child. A legal question involving statutory interpretation is subject to de novo review. Casey v. Casey, 2005 OK 13, ¶ 7, 109 P.3d 345, 348. "Under the de novo standard, this Court examines legal issues independently, without deference to findings of the trial court." In re T.T.S., 2015 OK 36, ¶ 14, 373 P.3d 1022, 1027.

III. ANALYSIS

¶10 ICWA's application in this case is undisputed.[10] When ICWA applies, the Oklahoma Indian Child Welfare Act (OICWA), 10 O.S.2011 §§ 40.1, et seq., also applies. See In re Adoption of D.M.J., 1985 OK 92, ¶ 9, 741 P.2d 1386, 1388. OICWA's declared purpose is "the clarification of state policies and procedures regarding the implementation by the State of Oklahoma of [ICWA]." 10 O.S.2011 § 40.1. The State's policy through OICWA is to "ensure that the intent and provisions of the federal [ICWA] are enforced." Id. OICWA requires compliance with ICWA in "all state voluntary and involuntary child custody court proceedings involving Indian children, regardless of whether or not the children involved are in the physical or legal custody of an Indian parent or Indian custodian at the time state proceedings are initiated." 10 O.S.2011 § 40.3(B).[11]

IV. SECTION 1912(b) OF THE INDIAN CHILD WELFARE ACT

¶11 The applicable ICWA statute is 25 U.S.C. § 1912(b), "Appointment of counsel," which provides:

In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. The court may, in its discretion, appoint counsel for the child upon finding that such appointment is in the best interest of the child. Where State law makes no provision for appointment of counsel in such proceedings, the court shall promptly notify the Secretary upon appointment of counsel, and the Secretary, upon certification of the presiding judge, shall pay reasonable fees and expenses out of funds which may be appropriated pursuant to section 13 of this title.[12]

The record establishes Mother filed separate applications requesting court-appointed counsel--some 26 months apart (five days before the date set for her disposition hearing and a month after State filed its petition to terminate her parental rights). The trial court granted both applications.[13] For purposes of this review, the indigency findings are presumed from the orders appointing counsel.

¶12 COCA concluded § 1912(b) is "silent regarding the term of court-appointed counsel" and "does not expressly provide that the parent shall be represented during the period of time when the parent is complying with the ISP." COCA failed to interpret § 1912(b) pursuant to the rules of statutory construction.

¶13 "[B]y virtue of the Supremacy Clause, 'we are governed by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence.'" Sparks v. Old Republic Home Prot. Co., 2020 OK 42, ¶ 20, 467 P.3d 680, 687 (quoting Hollaway v. UNUM Life Ins. Co. of Am., 2003 OK 90, ¶ 15, 89 P.3d 1022, 1027). "Where the United States Supreme Court has not spoken on the direct issue, 'we are free to promulgate judicial decisions grounded in our own interpretation of federal law.'" Id.

¶14 "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." Fanning v. Brown, 2004 OK 7, ¶ 10, 85 P.3d 841, 845. "Courts will give the words of a statute a plain and ordinary meaning, unless it is clear from the statute that a different meaning was intended by the Legislature." Id. at 845-46. "When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." In re City of Durant, 2002 OK 52, ¶ 13, 50 P.3d 218, 221. We must consider the statute as a whole, not just individual words or provisions. These same rules apply when interpreting ICWA. See In re M.S., 2010 OK 46, ¶¶ 13-14, 237 P.3d 161, 165-66 (finding ICWA § 1911(b) must be construed "as it is written" and that ICWA must be construed as a whole and in light of its stated purpose).

¶15 We find no opinions in which the U.S. Supreme Court interpreted § 1912(b) of ICWA to decide the issue before this Court--does the right to court-appointed counsel for a parent of an Indian child include the period between the disposition hearing and the parental rights termination proceeding? When addressing the lack of ICWA-required notice and consequential failure to appoint counsel, a limited number state courts have held § 1912(b) is a clear mandate of court appointed counsel for an indigent parent of an Indian child during the termination phase or critical stage.[14]

¶16 For purposes of deciding whether ICWA's mandate includes court-appointed counsel for a parent of an Indian child between the disposition and parental rights termination hearings, we conclude the text of § 1912(b)'s prepositional phrase--"in any removal, placement, or termination proceeding"--is determinative. The preposition "in" commonly means "[d]uring the act or process of"; "[t]o or at a situation" or "[w]ithin the limits, bounds, or area of." The American Heritage Dictionary 648 (1985). "In" may also mean "during part or all of a period of time" or "involved or connected with a particular subject or activity."[15]

¶17 The next term, "any," is used as an adjective to modify the three objects of the preposition "in"--removal, placement, or termination proceeding. When used in a statute, "any" is equivalent and has the force of "every" and "all." State ex rel. Porter v. Ferrell, 1998 OK 41, ¶ 9, 959 P.2d 576, 578. The use of the conjunction "or" to connect the three terms indicates they are alternatives to each other.[16] It also identifies that "any removal" and "any placement" are in the same class as a "termination proceeding."

¶18 ICWA provides the meaning of § 1912(b)'s terms--"removal, placement, or termination proceeding." The term "removal" may either refer to removal of an Indian child "from custody of a parent or Indian custodian," 25 U.S.C. § 1922 (2018),[17] or "from a foster care home or institution for the purpose of further foster care, preadoptive, or adoptive placement." Id. § 1916(b).[18]

¶19 The terms "placement" and "termination proceeding" refer to proceedings included in ICWA's definition of "child custody proceeding"--foster care placement, termination of parental rights, adoptive placement, and preadoptive placement. See 25 U.S.C. § 1903(1)(i)-(iv) (2018). These four ICWA-defined proceedings confirm the broad meaning of the terms "placement" and "termination proceeding" and Congress' intent to include the various proceedings that are subject to ICWA's mandate for court-appointed counsel for a parent of an Indian child.

¶20 The definition of "foster care placement" is further determinative of the question presented to this court. Pursuant to § 1903(1)(i),

"foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;

This definition includes the period at issue in this review proceeding--between the disposition hearing and the petition to terminate parental rights. Further, a "foster care placement" requires the following four elements: 1) removing an Indian child from a parent or Indian custodian, 2) temporary placement in a foster home or institution, 3) the parent or Indian custodian cannot demand the children's return, and 4) parental rights have not been terminated. The facts here satisfy all four elements. The subject children were removed from the custody of Mother and the father in an involuntary proceeding and placed in DHS custody for temporary placement in a foster home. Further, the parents could not demand the children's return, and State had not petitioned to terminate parents' parental rights.

¶21 It is also during this time of the involuntary proceeding that the parents' actions either accumulate in favor of termination or in favor of reunification; as such, the need for counsel is of paramount importance. The record demonstrates Mother began working her ISP, obtained employment, and visited her children. Her initial success with completing her ISP to the point of trial reunification does not negate her statutory right under ICWA to court-appointed counsel for the entirety of the proceeding.

¶22 The trial court's discharge of Mother's court-appointed counsel left her without legal representation: 1) during her twin daughters' removal from one relative foster home to another; 2) at all of the court-ordered ISP review/permanency hearings, which the record establishes she regularly attended; 3) during the Post-Adjudication Review Board (PARB) meeting held January 2017, when the Board advised Mother "to obtain legal aid to obtain custody of her children" and "DHS to help her complete this application";[19] and 4) at the August 23, 2017 hearing, during which the trial court approved DHS' termination of trial reunification. Based on our interpretation of § 1912(b), Mother was required to have court-appointed counsel during the entire foster care placement proceeding.

¶23 Considering ICWA in its entirety, as we must, we may not ignore that during the same period--between the disposition and termination proceedings--ICWA requires State to provide active efforts. According to § 1912(d):

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

(emphasis added). The first step to fulfill ICWA's mandate to protect Indian children, their parents, and the Indian tribe, including active efforts under § 1912(d), is compliance with § 1912(b)'s mandate for court-appointed counsel during all removal and other "child custody proceedings" subject to ICWA's heightened protections. We conclude ICWA's clear and unambiguous language requires uninterrupted court-appointed counsel upon a finding that a parent of an Indian child is indigent.

V. REQUESTED RELIEF

¶24 Mother was deprived of her ICWA-guaranteed right to counsel. Before we can grant her requested relief, however, we must take cognizance of facts arising during the pendency of this appeal.[20] First, due to pre-appeal delays and other extenuating circumstances, two of Mother's three children have now reached the age of emancipation, and the third child is closely approaching the age of emancipation, raising questions as to what relief may be granted.[21] "It is a long-established rule that this Court will not consume its time by deciding abstract propositions of law or moot issues." Baby F. v. Okla. Cty. Dist. Court, 2015 OK 24, ¶ 11, 348 P.3d 1080, 1084. 

¶25 We have previously refused to find an issue moot when the underlying defect cannot be cured, if the complaining party faces ongoing collateral consequences. For example, in In re D.B.W., 1980 OK 125, 616 P.2d 1149, the appellant challenged a trial court order involuntarily committing him to the hospital for mental health treatment. The appellee claimed the case was moot because the appellant had since been discharged from the hospital. Id. ¶ 4, 616 P.2d at 1150. We rejected this argument, recognizing that the appellant faced ongoing collateral consequences in the form of legal disabilities and social stigma resulting from his involuntary commitment. Id. ¶ 4, 616 P.2d at 1150-51. Here, Mother also faces ongoing collateral consequences as result of having her parental rights terminated. See 10A O.S.Supp.2015 § 1-4-904(B)(6).

¶26 Additionally, even if the issue is moot, we may, nevertheless, address it if (1) the appeal presents a question of broad public interest, or (2) the challenged action is capable of repetition, yet likely to evade review. Baby F., 2015 OK 24, ¶12, 348 P.3d at 1084 (citing Scott v. Okla. Secondary School Activities Ass'n, 2013 OK 84, ¶ 14, 313 P.3d 891, 895; State of Oklahoma. ex rel. Okla. Firefighters Pension & Ret. Sys. v. City of Spencer, 2009 OK 73, ¶ 4, 237 P.3d 125, 129; Payne v. Jones, 1944 OK 86, ¶¶ 3-5, 146 P.2d 113, 116).

¶27 The present case falls squarely within both recognized exceptions to the mootness doctrine. Treatment of the statutory provisions in question is a matter of broad public interest, as it implicates the fundamental rights of Indian parents and children. Additionally, there is a high likelihood that future cases could unfold in a similar manner without garnering any scrutiny on appeal. The trial court granted Mother's requests for counsel at the deprived adjudication and disposition hearing and the trial on terminating her parental rights. While the trial court erred in discharging Mother's counsel in the interim, its action could be viewed as not wholly unreasonable. Thus, it is not unlikely that future courts may do the same, and in instances where trial courts accommodate a party's request for counsel intermittently, the potential for prejudice in failing to provide uninterrupted appointment of counsel is less apparent. Where the prejudice is less apparent, future parties may be less likely to seek review.

¶28 As relief is warranted in this case, we must now address what form it should take. We note 25 U.S.C. § 1914 (2018) provides specific relief for violations of certain ICWA provisions:

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

¶29 In Oklahoma, there are three legal prerequisites in an action terminating parental rights based on the sole ground submitted to the jury in this matter--10A O.S.Supp.2015 § 1-4-904(B)(5) (failure to correct the conditions that lead to the children's deprived adjudication): 1) a deprived child adjudication order identifying the specific conditions that caused the children's deprived status, 2) a court-ordered service plan for the parents directed to help them correct the specific conditions within the statutory period, and 3) the parents' failure to correct the specific conditions that led to their children's deprived status. Mother was without counsel during proceedings related to the administration of her court-ordered service plan. Thus, the action terminating Mother's parental rights was taken in violation § 1912(b). Pursuant to § 1914, we must invalidate the trial court's order terminating Mother's parental rights, as well as any proceedings prior and necessary to termination that did not comport with § 1912(b).

VI. CONCLUSION

¶30 The trial court's discharge of Mother's counsel between the disposition hearing and the filing of the petition to terminate was reversible error. ICWA requires court-appointed counsel during all phases of a deprived child proceeding involving an Indian child or Indian children.[22] The Court of Civil Appeals' opinion is vacated. The district court's judgment is reversed and the cause remanded.

COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT'S JUDGMENT REVERSED;
CAUSE REMANDED.

Darby, C.J., Winchester, Edmondson, Combs, Gurich and Rowe, JJ., concur;

Kane, V.C.J., and Kauger, J., concur in result.

FOOTNOTES

[1] State argues in its Answer to the Petition that Mother raised for the first time on appeal the issue that "she was 'improperly denied' her right to counsel during the entirety of the proceedings below." However, the issue for certiorari review is one of public law, which this Court may resolve on a legal theory that was not tendered below and regardless of whether it was raised or briefed. See In re McNeely, 1987 OK 19, ¶ 4, 734 P.2d 1294, 1296.

[2] Mother confirmed the father had held a gun to her head, put a knife to her throat, and after he had choked her in October 2014, she left him. Mother also reported the father's abusive acts to Children.

[3] The affidavit attached to State's application alleged the emergency removal was necessary due to the threat of severe and immediate harm the father posed to Children upon his release from jail for outstanding bench warrants and Mother's inability to protect them.

[4] Check marks on the form order indicate sworn testimony was taken at the hearing held that day, parents appeared without counsel, and DHS was given authority to place the children "as appropriate." The order does not mark if ICWA applies or does not apply.

[5] The words "Counsel discharged, subject to re-appt. Court receives signature page from previously-filed ISP" are handwritten in the "Additional Notes" section of the trial court's June 23, 2015 Adjudication Order. The certified court appearance docket includes an entry on January 7, 2016, noting "added [M. Haggerty II] back as attorney for children. Court minute of 6-23-15 erroneously stated that all counsel was discharged, and should have been for parents only." "The appearance docket 'may serve in an appellate tribunal as an authoritative source for identifying the instruments the court clerk has filed in the case or for establishing any other matter which by law is required to be spread on that docket.'" Peoria Corp. v. Lemay, 1994 OK 106, ¶ 5, 895 P.2d 1340, 1341 (citing Hulsey v. Mid--Am. Preferred Ins. Co., 1989 OK 107, ¶ 6 n.5, 777 P.2d 932, 935 n.5).

[6] The trial court filed a permanency order on May 24, 2016 and discharged the CASA (Court Appointed Special Advocate) worker by court minute filed June 20, 2016. The next document in the record, the July 22, 2016 Post-Adjudication Review Board's Findings and Recommendations, notes "All 3 children are in trial reunification with bio[logical] mom, Iris Stacy."

[7] State also alleged against Father a third ground for termination (i.e., willful failure to contribute to the support of the children for the requisite period). See 10A O.S.Supp.2015 § 1-4-904(B)(7).

[8] Although the jury verdicts were rendered solely on § 1-4-904(B)(5), the judgment on appeal also includes a finding that Mother's parental rights were terminated pursuant to § 1-4-904(B)(16). State concedes the error, but argues the judgment may be corrected on remand to the court.

[9] COCA's remand instructions for the Amended Judgment are 1) to further correct ¶ 8 to state "the jury" made the § 1912(f) finding that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" and 2) to delete ¶ 7, which termination ground State conceded on appeal had been erroneously included.

[10] The record supports the children's eligibility for membership with Choctaw Nation of Oklahoma.

[11] There are two exceptions to OICWA's applicability--child custody proceedings arising either "from a divorce proceeding" or "from an adjudication of delinquency, unless there has been a request for termination of parental rights." See 10 O.S.2011 § 40.3(A)(1)-(2).

[12] ICWA defines "Secretary" as "Secretary of the Interior." 25 U.S.C. § 1903(11) (2018).

[13] COCA notes the Record "does not indicate whether Mother requested counsel at any time, before or after the adjudication petition was filed." However, the certified court appearance docket in the Appellate Record shows an entry of June 18, 2015 noting "Turned in Atty Appl (Mother, Iris Stacy)." The trial court appointed counsel for Mother by court minute filed June 22, 2015. The appearance docket includes two entries for June 22, 2015, the first noting "File Applic for Appt. Counsel -- Mother" and the second noting "Court appoints [J. Newman] to represent the Respondent Mother, Iris Stacy." Mother circled the June 18th entry and the second June 22nd entry in her Designation of the Record, requesting both be included in the record but only the latter is included. There are two September 7, 2017 docket entries -- Mother's second application for counsel and the court's order appointing counsel. These documents are included in the appellate record, and her second application supports an indigency finding.

[14] See D.E.D. v. State, 704 P.2d 774, 778 (Alaska 1985); In re G.L.O.C., 668 P.2d 235, 237 (Mont. 1983); In re Custody of A.K.H., 502 N.W.2d 790, 796 (Minn. Ct. App. 1993); State ex rel. Juvenile Dep't of Multnomah Cty.. v. Charles, 688 P.2d 1354, 1358 (Or. Ct. App.1984). The court in G.L.O.C. upheld its prior interpretation in In re M.E.M., 635 P.2d 1313 (Mont. 1981), that § 1912(b) is mandatory. For its holding, the M.E.M. court relied on § 1912(b)'s second sentence which gives the court discretion to appoint counsel for a child and found "[b]y inference the appointment of counsel in the case of an indigent parent is mandatory." Id. at 1317.

[15] In, Cambridge.com, http://dictionary.cambridge.org/dictionary/english/in (last visited May 28, 2021).

[16] Parallel form, Guidetogrammar.org, http://guidetogrammar.org/grammar/parallelism.htm (last visited May 28, 2021). The conjunction here also provides parallel structure for the same terms to prevent repetition of "in," "any," and/or "proceeding," resulting in a more compact prepositional phrase. Without parallel form, the subject prepositional phrase would read "in any removal [proceeding], [in any] placement [proceeding], or [in any] termination proceeding."

[17] 25 U.S.C.A. § 1922, "Emergency removal or placement of child; termination; appropriate action," provides:

Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

[18] Section 1916's prepositional phrase "of further foster care, preadoptive, or adoptive placement" is another example of ICWA's use of the conjunction "or" to connect the three objects of the preposition in order to prevent repeating the term "placement."

[19] The trial court's ISP review order filed February 28, 2017, included as an "Additional Order" that "Mother is working on gaining custody."

[20] "This court may take cognizance of facts arising during the pendency of an appeal if they have a direct impact on the issues tendered for review." Ne. Okla. Elec. Co-Op, Inc. v. State ex rel. Corp. Comm'n, 1991 OK 28, ¶ 7 n.6, 808 P.2d 680, 683 n.6.

[21] After the jury trial, one year passed before the journal entry of judgment terminating Mother's parental rights was filed. One month later, an amended judgment was filed. Mother's twin daughters, I.T.S. and I.M.S., were born November 1, 2002. Her son, R.E.S., was born December 19, 2003.

[22] The Oklahoma Indian Child Welfare Act (OICWA), 10 O.S.2011 §§ 40.1 et seq., has no equivalent statute requiring court-appointed counsel for a parent of an Indian child. Mother also argues she has a statutory right to counsel pursuant to the Oklahoma Children's Code, 10A O.S.Supp.2015 § 1-4-306(A)(1)(a). Our interpretation that § 1912(b) of ICWA is specific to an indigent parent of an Indian child and thereby eliminates consideration of a general statute regarding court-appointments.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 19, 734 P.2d 1294, 58 OBJ 714, McNeely, Matter of
Discussed
 1989 OK 107, 777 P.2d 932, 60 OBJ 1737, Hulsey v. Mid-America Preferred Ins. Co.
Discussed
 1991 OK 28, 808 P.2d 680, 62 OBJ 938, Northeast Oklahoma Elec. Co-op., Inc. v. State ex rel. Corp. Com'n
Discussed
 1994 OK 106, 895 P.2d 1340, 65 OBJ 3229, Peoria Corp. v. Lemay
Discussed
 2002 OK 52, 50 P.3d 218, CITY OF DURANT v. CICIO
Discussed
 2003 OK 90, 89 P.3d 1022, HOLLAWAY v. UNUM LIFE INSURANCE CO. OF AMERICA
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 2005 OK 13, 109 P.3d 345, CASEY v. CASEY
Discussed
 2009 OK 73, 237 P.3d 125, STATE ex rel. OKLA. FIREFIGHTERS PENSION AND RETIREMENT SYSTEM v. CITY OF SPENCER
Discussed
 2010 OK 46, 237 P.3d 161, IN THE MATTER OF: M.S.
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 2015 OK 24, 348 P.3d 1080, BABY F. v. OKLAHOMA COUNTY DISTRICT COURT
Discussed at Length
 2015 OK 36, 373 P.3d 1022, IN THE MATTER OF T.T.S.
Discussed
 1980 OK 125, 616 P.2d 1149, IN RE MENTAL HEALTH OF D. B. W.
Discussed
 2020 OK 42, 467 P.3d 680, SPARKS v. OLD REPUBLIC HOME PROTECTION CO. INC.
Discussed
 1998 OK 41, 959 P.2d 576, 69 OBJ 1884, STATE ex rel. PORTER v. FERRELL
Discussed
 1944 OK 86, 146 P.2d 113, 193 Okla. 609, PAYNE v. JONES
Discussed
 1985 OK 92, 741 P.2d 1386, Adoption of D.M.J., Matter of
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 40.1, Purpose - Policy of State
Discussed at Length
 10 O.S. 40.3, Application of Act - Exemptions - Determination of Indian Status
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA