CHICAGO, R. I. & P. RY. CO. v. TERRITORY.

No. 2085, Okla. T.   Opinion Filed June 22, 1908.

(97 Pac. 265.)

**APPEAL AND ERROR**—Actual Controversy—Hypothetical Case. The Supreme Court will not decide abstract or hypothetical cases, disconnected from the granting of actual relief, or from the determination of which no practical relief can follow.

(Syllabus by the Court.)

*Error from District Court, Garfield County; M. C. Garber, Trial Judge.*

Regulation of freight rates. Suit by the territory of Oklahoma against the Chicago, Rock Island & Pacific Railway Company. Injunction against charging certain freight rates. Judgment for plaintiff, and defendant brings error. Dismissed.

*M. A. Low, Blake, Blake & Low, J. C. Roberts,* and *I. G. Conklin,* for plaintiff in error.

*Charles West, Atty. Gen., W. O. Cromwell, Ex-Atty. Gen.,* and *Fred M. Elkin,* for defendant in error.

KANE, J.   This suit was commenced on the 9th day of August, 1906, in the district court of Garfield county, Okla. T., by the Attorney General, in the name of the territory of Oklahoma, by filing a petition therein, which alleged, in substance, that the Chicago, Rock Island & Pacific Railway Company is a corporation, incorporated in one of the states or territories of the United States, which one is unknown to plaintiff, and operating a line of railroad in the county of Garfield and other portions of the territory. That it had, in connection with other railways of the territory, adopted a tariff, prescribing certain rates on corn and wheat, and that in addition thereto recently adopted an addition of 5 cents per hundred on wheat, and 4 cents per hundred on corn, on shipments of that

commodity to the stations of Sayre, Next Branch, and Erick, 3 cents per hundred on wheat, and 2 cents per hundred on corn to the stations of Temple and Hastings, and 4 cents per hundredweight on wheat, and 3 cents per hundredweight on corn for shipments to Texola, known as an "arbitrary." That such arbitrary charges were unlawful, and that they were unreasonable and unjust. That the public and inhabitants of Oklahoma were entitled to rates that were reasonable and just, and that the maintenance of said demand was a public and common nuisance. That the charging and receiving of such arbitrary rates grossly injured the persons and property of the inhabitants of the territory of Oklahoma, and by reason of the multiplicity of said acts plaintiff had no adequate remedy according to the course of common law, and prayed that the defendant be enjoined from demanding and collecting said arbitrary charge.

To this petition the defendant filed its answer denying each and every allegation therein contained, and pleading that the court had no jurisdiction of the subject-matter such jurisdiction being vested exclusively in the Interstate Commerce Commission of the United States and the Circuit Courts of the United States, and alleging that the Attorney General of said territory had no jurisdiction and authority to commence, maintain, and prosecute said action, for the reason that, under the acts of Congress relating to the subject-matter of said action, the jurisdiction and authority to commence, maintain, and control the said action is vested exclusively in the Interstate Commerce Commission of the United States and the Attorney General of the United States.

On the 19th day of October, 1906, the cause came on to be heard, on the application of the plaintiff for a temporary writ of injunction, and on said day the court granted said writ and made an order, in words and figures as follows, to wit:

"Now on this October 19, 1906, the plaintiff being present by W. O. Cromwell, Attorney General, and Charles West, its special attorney, and defendant by C. O. Blake, its attorney, the application of the plaintiff for a temporary order of injunction comes on

to be heard, and after the introduction of the evidence by each side, both sides rest, and the court finds for the plaintiff, against the defendant, that the allegations of the petition and its application are true, and that a temporary order of injunction ought to be granted herein. It is therefore considered, ordered, and adjudged that the defendant, the Chicago, Rock Island & Pacific Railway, be forever restrained and enjoined from demanding or collecting or receiving, for the transportation of freight or wheat shipped in car load lots to Sayre, Next Branch, Erick, and Texola, 5 cents per hundredweight in addition to the local distance tariff, and on corn 2 cents per hundredweight when shipped to Temple or Hastings, and 4 cents per hundredweight on wheat when shipped to Waurika, and 4 cents per hundredweight on corn to Sayre, Next Branch, Erick, and Texola, and 3 cents per hundredweight on corn shipped to Temple and Hastings, in addition to the local distance tariff charge to said stations now in force and effect, until the final hearing of this cause, and until further order of the court, without bond, to all of which the defendant at the time excepted, and said defendant asks, and for good cause shown was by the court making the order granted, 60 days in which to make and serve a case-made for appeal to the Supreme Court, and the plaintiff was granted 15 days in which to suggest amendments thereto, the same to be settled upon 5 days' notice in writing by either party. That the order shall not take effect until the expiration of the time allowed to make and settle said case, and 17 days additional time to file said appeal."

From the above order the defendant appealed to the Supreme Court of the terrtiory of Oklahoma, and the cause was transferred to the Supreme Court of the state, under the terms of the enabling act and schedule to the Constitution.

It appears from the petition and brief of appellee that it seeks to restrain, by injunction, interference with certain common-law rights, to which, it contends, the people of the territory of Oklahoma were entitled. The following is a statement of the theory of the case, taken from the brief of counsel:

"Appellee asks the court to enforce in this action the following common-law rule, which is well established: 'At common law a public or common carrier is bound to accept and carry for all upon being paid a reasonable compensation. The common law

condemns unjust and unreasonable charges, and it has always been the right of a shipper at common law to receive back any overcharge or excess beyond a reasonable compensation.' "

In support of this doctrine *Beadle v. K. C. etc., Ry. Co.*, 51 Kan. 248, 32 Pac. 910, is cited. The appellant insists that at the time the action was commenced there was no common law, in its accepted sense, within the territory of Oklahoma, and further argues: First, that the court below had no jurisdiction of the subject-matter in this action; second, the territory of Oklahoma had no authority to sue in said action or maintain said action; third, the Attorney General had no authority to maintain said action; and, fourth, the petition did not state facts sufficient to constitute a cause of action.

Both parties brief their respective sides of the controversy learnedly and exhaustively. But to our mind conditions have so changed since the commencement of this suit that it is unnecessary for the court to pass upon the numerous intricate questions of law argued by counsel. Whatever may have been the powers of the territory of Oklahoma to protect the common-law rights of its inhabitants against common carriers by the writ of injunction at the time this suit was commenced, such common-law rights, in so far as they may have related to fixing the rate for carrying passengers or freight by public or common carriers, have been superseded by the Constitution and laws of the state of Oklahoma.

Section 18, art. 9, of the Constitution provides that:

"The commission [meaning the corporation commission], shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies, and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications, of traffic, and rules and regulations, and shall require them to establish and maintain all such public ser-

vice, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the commission within the scope of its authority, shall be unlawful and void."

While it is not clear from the record or the briefs of the counsel whether the rate complained of had reference to intrastate or interstate shipments, yet it is reasonably apparent that intrastate rates alone are sought to be controlled. Taking this view of it, it will be seen, by the above quotation from the Constitution of the state of Oklahoma, that until changed by the Legislature, the question of fixing intrastate rates is now entirely with the corporation commission, subject to appeal from its decisions to the Supreme Court of the state. This being so, and the further fact that, since this suit was filed in the Supreme Court of the territory of Oklahoma, the territory of Oklahoma and Indian Territory have been erected into a state as the state of Oklahoma has so changed conditions that the settlement of the other questions raised could serve no useful purpose; nothing, so far as the record discloses, would be settled by a decision of this court, except who shall pay the costs. It has been held by this court in the following cases: *Freeman v. Board of Med. Examiners,* 20 Okla. 610, 95 Pac. 229; *Burkhalter v. Smith,* 20 Okla. 625, 95 Pac. 241; *Harman v. Burt,* 20 Okla. 509, 94 Pac. 528, and *Parker et al. v. Territory,* 20 Okla. 851, 94 Pac. 175, that—"the Supreme Court will not decide abstract or hypothetical cases disconnected from the granting of actual relief, or from the determination of which no practical relief can follow." We believe this case falls within the rule above laid down. Under the present order of things the necessity of invoking the common-law rule for the regulation of rates does not exist. And the relations existing between the state and the common carriers doing business therein at this time and the relations that existed between the territory of Oklahoma and the com-

mon carriers therein are so dissimilar that the language of Pearson, C. J., in a case similar in principle (*Kidd v. Morrison et al.,* 62 N. C. 38), applies with great force to the case at bar:

"There being no longer any subject-matter of controversy, the question arises whether the court will hear the cause, and make a decree that can only serve to dispose of the costs? To say nothing of the labor and consumption of time in wading through a mass of depositions, and weighing the learned arguments which the hearing would elicit, the court does not consider itself at liberty to go into a hearing, for the reason that there is nothing now before it but a mere hypothetical case, and any declaration of principle set out in the decree would be entitled to, and would receive no more consideration than mere *dicta.*"

We are therefore of the opinion that this cause ought to be dismissed. It is so ordered.

All the Justices concur.