OSCN Found Document:OKLAHOMA ELECTRIC COOPERATIVE, et al., v. STATE ex rel. OKLAHOMA CORPORATION COMMISSION

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLAHOMA ELECTRIC COOPERATIVE, et al., v. STATE ex rel. OKLAHOMA CORPORATION COMMISSION
2025 OK 60
Case Number: 119083
Decided: 09/23/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 60, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

OKLAHOMA ELECTRIC COOPERATIVE, OKLAHOMA ASSOCIATON OF ELECTRIC COOPERATIVES, Appellants,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA CORPORATION COMMISSION, Appellee.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION, 
CAUSE NO. PUD 201900056, ORDER NO. 714135

¶0 Oklahoma Electric Cooperative (OEC) appealed an order of the Oklahoma Corporation Commission denying OEC's application for injunctive relief against Oklahoma Gas and Electric (OG&E). OEC sought to enjoin OG&E from providing retail electric service to a customer located in OEC's certified territory pursuant to the Large Load exception to the Retail Energy Supplier Certified Territory Act (RESCTA), 17 O.S. 2011, § 158.25et seq. The Commission denied OEC's application, but did so based only upon OG&E's affirmative defenses of estoppel, waiver, and laches. We retained OEC's appeal. We hold that RESCTA's Large Load exception does not permit OG&E to connect with third-party transmission lines in order to extend its service into OEC's certified territory, in accord with this Court's recent decision in Oklahoma Gas & Electric Co. v. Oklahoma Corp. Comm'n, 2025 OK 15565 P.3d 418People's]. The Commission erred to the extent its analysis fails to reach this conclusion. Because People's has prospective-only application, however, the practical result is that OG&E will not be enjoined from serving the customer in the present case. We therefore affirm the Commission's order insofar as it permits OG&E to continue providing retail electric service to the customer in OEC's certified territory.

ORDER OF THE CORPORATION COMMISSION IS AFFIRMED

J. Eric Turner and Adam J. Singer, Derryberry & Naifeh, LLP, Oklahoma City, Oklahoma, for Appellant Oklahoma Association of Electric Cooperatives

Brian W. Hobbs, Pain, Garland and Hobbs, LLP, Anadarko, Oklahoma, for Appellant Oklahoma Electric Cooperative

Jana L. Knott, Bass Law, Oklahoma City, Oklahoma, for Appellant Oklahoma Electric Cooperative

Clyde A. Muchmore and Melanie Wilson Rughani, Crowe & Dunlevy, PC, Oklahoma City, Oklahoma, for Appellee Oklahoma Gas and Electric Company

William L. Humes, Oklahoma Gas and Electric Company, Oklahoma City, Oklahoma, for Appellee Oklahoma Gas and Electric Company

Patricia L. Franz and Daniel P. Boyle, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellee Oklahoma Corporation Commission

Curtis M. Long and J. Dillon Curran, Conner & Winters, LLP, Oklahoma City, Oklahoma, for Appellee Blue Mountain Midstream, LLC

OPINION

DARBY, J.

¶ 1 The present case arises from the Oklahoma Corporation Commission (Commission) denying an application by Appellant Oklahoma Electric Cooperative, Inc. (OEC) seeking to enjoin Appellee Oklahoma Gas and Electric (OG&E) from providing retail electric service to a rural customer in OEC's certified territory. This is one of five companion cases, one of which we decided earlier this year -- Oklahoma Gas & Electric Co. v. Oklahoma Corp. Comm'n, 2025 OK 15565 P.3d 418People's]. In the present case and in People's, the principal question was whether the "Large Load" exception to the Retail Electric Supplier Certified Territory Act (RESCTA or the Act), 17 O.S. 2011, § 158.25et seq. permits OG&E to connect with third-party transmission lines to "extend" its retail electric service to a customer in another supplier's certified territory. We determined in People's that RESCTA prohibits OG&E from doing so, but we limited the decision to prospective-only application. For existing retail electric services already established pursuant to RESCTA's Large Load exception, People's prospective application preserves the status quo.

¶ 2 The Commission did not decide the present case by analyzing RESCTA's Large Load exception. Instead, it denied OEC's application for injunctive relief based only on OG&E's affirmative defenses of laches, estoppel, and waiver, and determined that OG&E may continue to serve the Plant pursuant to those equitable principles. The result is the functional equivalent to the outcome mandated by People's prospective-only application insofar as OG&E may continue to serve the customer here. We hold that further analysis by this Court is now moot with regard to OG&E's equitable defenses. Although OG&E's conduct is not permitted under RESCTA, we affirm the Commission's order to the extent that it ultimately permits OG&E to continue to serve the Plant.

BACKGROUND_AND_PROCEDURAL_HISTORY

¶ 3 This appeal arises from a dispute over whether Appellee Oklahoma Gas and Electric (OG&E) may lawfully provide retail electric service to the Chisolm Trail Plant (Plant), a large cryogenic natural gas facility owned by Appellee Blue Mountain Midstream, LLC (Blue Mountain), in an unincorporated area outside the city limits of Tuttle, Oklahoma, in Grady County. The Plant is located in the certified territory of Appellant Oklahoma Electric Cooperative, Inc. (OEC), which has exclusive rights to provide electricity to customers in the area pursuant to the Retail Energy Supplier Certified Territory Act (RESCTA or the Act), 17 O.S. 2011, § 158.25et seq.

¶ 4 Under RESCTA, another supplier is not permitted to provide retail electric service to customers in OEC's certified territory unless an exception in the Act is applicable. 17 O.S. 2011, § 158.2517 O.S. 2011, § 158.25

¶ 5 In June 2016, Blue Mountain and OG&E executed a preliminary "Will Serve Agreement" for OG&E to provide electric service to the Plant. In 2017, OG&E and Blue Mountain agreed to investments required for construction of a substation and distribution infrastructure necessary for OG&E to serve the Plant. At the time, OG&E did not have any retail distribution lines in the vicinity. In order to provide service to the Plant, OG&E connected with a third-party transmission line owned by Public Service Company of Oklahoma (PSO). From June 2017 through June 2018, OG&E and Blue Mountain engaged in major construction efforts on the project. Blue Mountain completed construction and placed the Plant into service in June 2018. OG&E began providing service to the Plant on May 7, 2018, and has continued to provide retail electric service to the Plant since that date.

¶ 6 The present case is one of five companion cases retained by this Court dealing with alleged violations of RESCTA. Four of those cases involve challenges before the Commission regarding OG&E's use of third-party transmission lines to extend its service under RESCTA's Large Load exception. CKenergy 1 -- where it held for the first time that RESCTA's Large Load exception did_not permit a retail electric supplier to tap into third-party transmission lines to extend its service to a customer in another supplier's exclusive territory. CKenergy 1, OEC argued that OG&E's conduct violated RESCTA and requested the Commission to enjoin OG&E from continuing to serve the Plant.

¶ 7 On August 26, 2020, the Commission issued a final order in the instant case denying OEC's request for injunctive relief. Although the underlying facts are very similar here, the Commission declined to follow its earlier decision in CKenergy 1 where it held that RESCTA prohibited OG&E's conduct. 

ANALYSIS

A. RESCTA's Large Load Exception

¶ 8 To establish a coordinated system for providing electric service to customers in rural areas, the Legislature enacted RESCTA in 1971. Under the Act, each rural electric supplier has the exclusive right to provide retail service to customers within an assigned a geographic territory, and unless an exception under RESCTA applies, no retail electric supplier shall "furnish, make available, render or extend its retail electric service to a consumer for use in electric-consuming facilities located within the certified territory of another retail electric supplier." 17 O.S. 2011, § 158.25

The provisions of this act shall not preclude any retail electric supplier from extending its service after the effective date of this act (1) to its own property and facilities, in an unincorporated area, and (2) subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger.

17 O.S. 2011, § 158.25

¶ 9 The dispute in present appeal centers on the meaning of the term "extending its service" contained in the Large Load exception, and whether OG&E may lawfully tap into third-party transmission lines to "extend" its service to the Plant. RESCTA does not define this term, nor does it detail the manner or method by which a foreign retail electric supplier may "extend" its service into a different supplier's certified territory.

B. This Court's Decisions in the Companion Cases -- CKenergy 1 and People's

¶ 10 During the pendency of this appeal, this Court issued opinions in two of the companion cases, both dealing with the same question regarding the Large Load exception as presented here. The issue first came before us in CKenergy 1. There, we held that RESCTA's Large Load exception did_not prohibit the use of open-access transmission lines, and we vacated the order of the Commission enjoining OG&E from furnishing retail electric service directly from third-party transmission facilities. Oklahoma Gas & Elec. Co. v. State ex rel. Oklahoma Corp. Comm'n [CKenergy 1], 2023 OK 33535 P.3d 1218

¶ 11 The evolution of this Court's analysis, however, did not end with CKenergy 1. In the second companion case to come before us -- People's -- this Court revisited the question of whether a foreign supplier may use third-party transmission lines to extend service under RESCTA's Large Load exception. Overruling CKenergy 1, we held that RESCTA prohibited service in such a manner. Oklahoma Gas & Elec. Co. v. State ex rel. Oklahoma Corp. Comm'n, [People's], 2025 OK 15565 P.3d 418

¶ 12 In both People's and CKenergy 1, the Commission reached the same conclusion regarding RESCTA -- both Commission orders enjoined OG&E from serving rural customers under the Large Load exception. Applying a de novo standard of review as circumscribed by the Oklahoma Constitution, Article 9, Section 20, People's that the Commission's interpretation of RESCTA was a permissible determination and a conclusion sustained by the law and substantial evidence. People's, ¶ 37-41, 565 P.3d at 429-430. Under People's, RESCTA's phrase "extending its service" means the lengthening of a retail electric supplier's own retail distribution system, and prohibits a retail electric supplier from tapping into third-party distribution lines to reach into another supplier's certified territory. Id.

¶ 13 Critical to today's analysis, however, is the fact that our pronouncement in People's bears prospective application and specifically does not apply to existing retail electric services which have already been established pursuant to RESCTA's Large Load exception. People's, ¶ 69, 565 P.3d at 436. We explained our reasoning as follows:

Prospective application is appropriate in order to avoid inequity, unfairness, or undue hardship to the retail electric suppliers which have already invested substantial resources in providing service under the Large Load exception, and to their customers who have elected to set up operations in rural locations and obtained electric service in reliance upon this regulatory approach.

Prospective application is also necessary to further the general purposes of RESCTA to establish orderly development of coordinated statewide retail electric service, to avoid wasteful duplication of facilities, and to preserve the Oklahoma landscape. In the present case, Tall Oak selected OG&E to provide service to the Plant, and OG&E has been doing so for years. People's waited approximately ten (10) months after OG&E executed the agreement to provide electric service to the Plant, and filed its case with the Commission only nine (9) days before OG&E completed construction of its facilities. Retroactive application of our decision would be inappropriate to the extent it would require OG&E and other suppliers to discontinue serving existing customers, resulting in wasteful duplication of facilities and a negative impact on the Oklahoma landscape.

Id. ¶¶ 67-68, 565 P.3d at 435--36 (emphasis added).

C. People's Governs the Core Dispute and Moots the Equitable Arguments

¶ 14 Although the Commission did not have the benefit of our final pronouncement in People's at the time it addressed OEC's application in this case, the law in Oklahoma is now settled. RESCTA's Large Load exception does not permit OG&E, a foreign supplier, to tap into third-party transmission lines in order to extend its service to a customer in OEC's certified territory. Our holding in People's governs the core dispute giving rise to this case, as well as the other companion cases in which the same question is at issue.

¶ 15 OEC's remaining propositions of error concern the Commission's findings in favor of OG&E and Blue Mountain on their affirmative defenses. Both below and on appeal, Appellees argue that OEC unreasonably delayed more than two years to file its application while OG&E and Blue Mountain invested millions of dollars in the project. The Commission agreed. Its order contains detailed factual findings regarding the development of the Plant and its electric infrastructure, the timeline involved, and the various communications between the parties regarding OG&E providing service to the large-load customer located in OEC's certified territory. The Commission stated as follows:

THE COMMISSION FURTHER FINDS that during the planning and construction of the Plant, through initial start-up and continuing through the first year of operation, OEC failed to object to OG&E's service to the Plant. Blue Mountain received no notice, directly or indirectly, and had no knowledge of any claim by OEC to an exclusive right to serve the Plant, nor if its intent to contest or enjoin OG&E's service, nor any assertion by OEC that OG&E could not legally provide electric service to the Plant.

Final Order, Aug. 26, 2020; Rec. at 1299. The Commission concluded that the equitable principles of laches, estoppel, and waiver barred OEC's claim for injunctive relief. Id.

¶ 16 OEC argues that the Commission's determination is neither supported by substantial evidence nor legally correct. OEC maintains that the Commission erred in applying these equitable principles, in part because, although OEC was aware on or about June 2017 that OG&E would be serving the Plant, the evidence failed to show that OEC knew how OG&E intended to serve the Plant until 2019. OEC asserts that it assumed OG&E would extend its own transmission line rather than tap into a third-party transmission line. OEC argues that it filed its application in a reasonable time frame after discovering that OG&E was unlawfully serving the Plant. 

¶ 17 Our consideration of OEC's remaining propositions of error, however, is precluded by the mootness doctrine. This Court has long held that it will not decide "abstract or hypothetical questions disconnected from the granting of actual relief or make determinations where no practical relief may be granted." Rogers v. Excise Bd. Of Greer Cty., 1984 OK 95701 P.2d 754See also, e.g., Westinghouse Elec. Corp. v. G.R.D.A., 1986 OK 20720 P.2d 713Chicago, R.I. & P. Ry. Co. v. Territory, 1908 OK 11097 P. 265

Mootness is a state or condition which prevents the appellate court from rendering relief. Where, as here, after an appeal has been commenced, conditions arise which preclude an appellate decision from affording any effective relief, the appeal will be dismissed for mootness. A viable controversy must continue at all stages of review--both on appeal and certiorari. It is a long-established rule that this court will not consume its time by deciding "abstract propositions of law" or moot issues.

State ex rel. Oklahoma Firefighters Pension & Ret. Sys. v. City of Spencer, 2009 OK 73237 P.3d 125

¶ 18 Even if this Court were to hold that the Commission did indeed err in denying OEC's application, no real relief is affordable to OEC here. Our holding in People's is limited to prospective-only application -- we specified that the decision shall_not apply to existing retail electric services and facilities which have already been established pursuant to RESCTA's Large Load exception. People's, 2025 OK 15

¶ 19 As a practical matter, we recognize that the equitable considerations justifying prospective application in People's are comparable to those supporting OG&E's affirmative defenses here. In People's, we sought to avoid inequity, unfairness, and undue hardship to retail electric suppliers and their customers who had already made substantial investments in setting up their rural operations. People's ¶ 67, 565 P.3d at 36. OG&E's equitable arguments also invoke similar factors. Under either approach, the outcomes are functionally equivalent -- OG&E's existing operation may remain undisturbed.

¶ 20 Finally, we note that Oklahoma does recognize two exceptions to the mootness doctrine: (1) when the appeal presents a question of broad public interest, and (2) when the challenged event is capable of repetition, yet evading review. Baby F. v. Oklahoma Cty. Dist. Ct., 2015 OK 24348 P.3d 1080People's. Nor does it appear that the Commission is likely to encounter future cases involving this issue or repeat its action. Further analysis from this Court will have no meaningful effect, and hence the equitable defense arguments will not be addressed.

CONCLUSION

¶ 21 Our decision in People's, issued after this appeal was filed, holds that RESCTA's Large Load exception does not permit a retail electric supplier to "extend" its service by tapping into a third-party's transmission facilities in order to serve a customer in another supplier's certified territory. The law on this question is now settled. Our holding in People's, however, has prospective application only, and shall not apply to existing retail electric services and facilities which have already been established pursuant to RESCTA's Large Load exception. Accordingly, although OG&E's conduct in the present case is not permitted by RESCTA, OG&E is not required to discontinue its operations here. Because no injunctive relief is available to Appellants based upon any issue raised in the present case, Appellants' remaining propositions of error are moot. The Commission's order is affirmed to the extent it permits OG&E to continue providing retail electric service to the customer in OEC's certified territory.

ORDER OF THE CORPORATION COMMISSION IS AFFIRMED

Rowe, C.J., Kuehn, V.C.J., Winchester, Combs, Darby and Kane, JJ., concur;
Jett, J., concurs in result:

Jett, J., concurring in result
"I agree that the Corporation Commission's order should be affirmed based on our ruling in Oklahoma Gas & Electric Co. v. Oklahoma Corp. Comm'n, 2025 OK 15565 P.3d 418

Edmondson and Gurich, JJ., disqualified.

 

FOOTNOTES

CKenergy 1)); Case No. 118,857 (Okla. Gas and Elec. Co. v. Okla. Corp. Comm'n, (People's)); and Case No. 119,054 (Lake Region Elec. Cooperative; Okla. Assoc. of Elec. Cooperatives v. Okla. Corp. Comm'n). See further discussion, infra, regarding this Court's opinions in CKenergy 1 and People's.

The fifth companion case, Case No. 119,088, does not bear upon our analysis today, as it involves the meaning of an unrelated term within RESCTA's Large Load exception. We recently issued an opinion in that case, holding that the term "connected load" as used in the Large Load exception, means "the total electric power-consuming rating, or 'nameplate rating,' of all devices connected to a distribution system." Oklahoma Gas & Elec. Co. v. Oklahoma Corp. Comm'n, 2025 OK 43571 P.3d 729

CKenergy 1" to identify the underlying cause before the Commission as well as the decision from this Court in the appeal arising therefrom.

CKenergy 1 and People's were still pending, with no final pronouncement from this Court.

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

Okla. Const. art. IX, § 20 (emphasis added). As we explained in People's, the Commission's statutory interpretation receives a limited de novo review -- its "conclusions do not constitute precedent to which we must necessarily defer, or presume correct," but the Oklahoma Constitution requires "that we give some regard" to the Commission's legal determinations "in order to conclusively determine if the order is sustained by law and substantial evidence." Oklahoma Gas & Elec. Co. v. State ex rel. Oklahoma Corp. Comm'n, [People's], 2025 OK 15565 P.3d 418Id. ¶ 24, 565 P.3d at 426.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105